STATE of Wisconsin, Plaintiff-Respondent,

v.

David Carneal WHITE, Defendant-Appellant.

Court of Appeals

*No. 99–0577–CR. Submitted on briefs March 7, 2000.—Decided April 4, 2000.*

2000 WI App 147

(Also reported in 615 N.W.2d 667.)

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Jeffrey A. Kingsley*, of *Abbott & Kingsley*, of Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle*, attorney general, and *Sally L. Wellman*, assistant attorney general.

Before Wedemeyer, P.J., Schudson and Curley, JJ.

¶ 1. SCHUDSON, J. David Carneal White appeals from the circuit court judgment and order, following his conviction for substantial battery, staying his prison sentence until he gains supervised release or discharge from his WIS. STAT. ch. 980 (1997–98) commitment.[1] He argues that the court erred by staying his sentence based on his status as a sexually violent person committed under ch. 980.[2] We conclude, consistent with the reasoning of *State v. Szulczewski*, 216 Wis. 2d 495, 574 N.W.2d 660 (1998), that the circuit court had discretion to stay White's sentence until his supervised release or discharge under ch. 980. Accordingly, we affirm.

¶ 2. The facts are undisputed. On March 13, 1998, White pled guilty to substantial battery, in viola-

---

[1] All references to the Wisconsin Statutes are to the 1997–98 version unless otherwise noted.

[2] On appeal, White challenges only the sentencing court's *authority* to stay his sentence, not its discretionary decision in doing so. Indeed, he concedes that the court, in exercising discretion to stay his sentence, was following the recommendation of both the prosecution *and the defense*.

tion of WIS. STAT. § 940.19(2).[3] On March 31, 1998, as a result of proceedings unrelated to the substantial battery, White was committed for institutional care as a sexually violent person under WIS. STAT. § 980.06. In April 1998, the circuit court sentenced White to twenty-three months in prison for the substantial battery. The court stayed the sentence "until the defendant, in connection with his Ch. 980 commitment, gains supervised release to a non-secure placement or facility, such as any facility where the defendant would have access to the community; or until the defendant is discharged from his Ch. 980 commitment, whichever comes first."

¶ 3. White argues that the court had no authority to stay his sentence because WIS. STAT. § 973.15(1), in relevant part, requires that "all sentences [to the Wisconsin state prisons] commence at noon on the day of sentence." While acknowledging that § 973.15(8)(a)1, on which the circuit court relied for its authority to stay the sentence, allows a court to stay the execution of a sentence for "legal cause," White maintains that a WIS. STAT. ch. 980 commitment does not constitute "legal cause." The State responds that the supreme court's reasoning in *Szulczewski* legally and logically encompasses the circumstances here and, therefore, establishes that the circuit court had the authority to exercise discretion to stay White's sentence.[4] We agree.

---

[3] Section 940.19(2) of the Wisconsin Statutes provides: "Whoever causes substantial bodily harm to another by an act done with intent to cause bodily harm to that person or another is guilty of a Class E felony."

[4] The State also responds that White is judicially estopped from arguing that the circuit court lacked authority to stay his sentence because he took the opposite position at sentencing. *See State v. Magnuson*, 220 Wis. 2d 468, 470–71, 583 N.W.2d

¶ 4.   In *Szulczewski*, the supreme court considered whether a circuit court had authority to stay a

843 (Ct. App. 1998) (appellate court may decline to consider party's argument on appeal that directly contradicts that party's argument in the trial court); *cf. State v. Mendez*, 157 Wis. 2d 289, 294, 459 N.W.2d 578 (Ct. App. 1990) ("A party will not be allowed to maintain inconsistent positions in judicial actions and proceedings."). The State's position is supported by the record reflecting that defense counsel, in both his sentencing brief and argument, repeatedly maintained that the court could and should stay White's sentence. Defense counsel contended that, for purposes of determining whether the court had authority to stay the sentence, White's circumstances were comparable to those of the defendant in *State v. Szulczewski*, 216 Wis. 2d 495, 574 N.W.2d 660 (1998), and that, "in terms of both legislative intent and the law," their circumstances were "identical."

As the State also acknowledges, however, "[t]he only possible reason not to apply judicial estoppel in this case is the hint in the record that perhaps [White] did not agree with the position his counsel took at sentencing." At his sentencing, White stated, in relevant part:

> I'll try to explain the [chapter 980 commitment] treatment, the treatment also extends to a halfway house. And what I was trying to say if I'm going to do the treatment, let me do it a hundred percent. Let me go all of the way. Even if I am at the halfway house and, like you said, then the penitentiary time kicks in there, and I can't go that then I got to go back to the joint, so that is my term right there, 50 to 75, so let me do the jail time so I can be a hundred percent. Let me get the jail time out, and then I still, under the 980 don't make no difference, so I can do the hundred percent, instead of just going halfway, let me go all of the way—

White's comments are ambiguous and, at most, seem to address the circuit court's *discretion* to decide whether to stay the sentence, not its *authority* to do so. Still, given the possibility that White's position may have differed from that of defense counsel, and given that resolution of the underlying legal issue may obviate the need to revisit the same issue, both in the

sentence, for battery by a prisoner, during the period in which the defendant remained in a mental institution, having been committed, in an unrelated case, following his acquittal by reason of mental disease or defect (NGI), under WIS. STAT. § 971.17 (1993–94). *See Szulczewski*, 216 Wis. 2d at 497. The supreme court held that a circuit court "has the discretion to decide whether to stay execution of a prison sentence imposed on an NGI acquittee who is convicted of and sentenced for a crime while under the NGI commitment." *Id.*

¶ 5.  The supreme court acknowledged the apparent conflict between WIS. STAT. § 973.15(1) (1993–94), generally requiring that "all sentences commence at noon on the day of sentence," and WIS. STAT. § 971.17(1) (1987–88), which, in relevant part, requires that "[w]hen a defendant is found not guilty by reason of mental disease or defect, the court shall order him to be committed to the department [of health and social services] to be placed in an appropriate institution for custody, care and treatment until discharged as provided in this section." *See Szulczewski*, 216 Wis. 2d at 499–500. The supreme court considered whether a cir-

instant case and in others that eventually will come to Wisconsin's courts, we decline to invoke judicial estoppel. *See State v. Petty*, 201 Wis. 2d 337, 354, 548 N.W.2d 817 (1996) (equity does not require application of judicial estoppel where defendant's trial court conduct may have been an "unthinking or confused blunder," particularly given that "the inapplicability of the doctrine is justified by the more compelling interest of allowing a party to correct an innocent mistake, in light of the high stakes involved in a criminal proceeding"); *see also State v. McCready*, 2000 WI App 68, ¶ 8, Nos. 99–1822–CR, 99–1823–CR (court of appeals has discretion to not invoke judicial estoppel, even when defendant has " 'play[ed] "fast and loose with the courts" by asserting inconsistent positions' ") (quoted sources omitted).

cuit court could stay the sentence of "an NGI acquittee who is convicted of and sentenced for a crime while under the NGI commitment," *see id.* at 497, despite the fact that "§ 973.15 requires immediate imprisonment of a convicted defendant, with no exception made expressly for NGI acquittees," *see id.* at 501, and despite the fact that "§ 971.17(1) does not on its face authorize the discharge of an NGI acquittee for imprisonment upon sentence for a crime," *id.*

¶ 6.   The supreme court construed the apparently conflicting statutes to "harmonize" them in a manner serving the purposes of both. *See id.* at 503–05. To do so, the court, ascertaining and giving effect to the legislature's intent in enacting each statute, *see id.* at 504–05, concluded that, under WIS. STAT. § 973.15(8)(a) (1993–94), "legal cause" for a stay of sentence encompassed an NGI acquittee's commitment, *see id.* at 505–08.

■

¶ 7.   Here, as in *Szulczewski*, two statutory provisions are in apparent conflict, thus requiring judicial interpretation. Statutory interpretation presents a question of law we review independently, benefiting from the analysis of the circuit court. *See id.* at 499. As the supreme court reiterated:

> Under the ordinary rules of statutory interpretation, statutes should be reasonably construed to avoid conflict. When two statutes conflict, a court is to harmonize them, scrutinizing both statutes and construing each in a manner that serves its purpose. The principal objective of statutory interpretation is to ascertain and give effect to the intent of the legislature.

*Id.* at 503–04 (citations omitted).

¶ 8. The purpose of WIS. STAT. § 973.15(1) is not ascertained in isolation. *See id.* at 504. Rather, its requirement for immediate commencement of a sentence must be interpreted together with: (1) the allowance for staying a sentence for "legal cause," under § 973.15(8)(a), *see id.* at 505; and (2) "the objectives of deterrence[,] retribution, and segregation" of the criminal code, *see id.* at 504. Further, the supreme court explained:

> Even if a criminal statute does not expressly govern the conduct of persons confined to mental health facilities, the language of many criminal statutes can be interpreted to govern the conduct of such persons. It is therefore reasonable to conclude that the legislature intended NGI acquittees to experience the consequences set forth in the criminal code. It is also reasonable to conclude that the legislature intended to effectuate the goals of the NGI statutes, including treatment of an NGI acquittee's mental illness and behavioral disorders, even when an acquittee commits a subsequent criminal offense.

*Id.* at 504–05. Similarly, the crime of substantial battery, for which White was sentenced, no less than the crime of battery by a prisoner, for which the defendant in *Szulczewski* was sentenced, implicates the legislative objectives of "deterrence[,] retribution, and segregation." *See id.* at 504. And, as we will explain, the purposes of WIS. STAT. ch. 980, no less than those of WIS. STAT. § 971.17, implicate concerns for the treatment of mental illness and behavioral disorders.

¶ 9. While WIS. STAT. §§ 980.06, 980.08, and 980.09, setting forth the commitment, supervised release, and discharge provisions for sexually violent persons, say nothing about whether a commitment could ever be interrupted by a subsequent sentence,

the "principal purposes" of WIS. STAT. ch. 980 are clear: "the protection of the public and the treatment of convicted sex offenders who are at a high risk to reoffend in order to reduce the likelihood that they will engage in such conduct in the future." *State v. Carpenter*, 197 Wis. 2d 252, 271, 541 N.W.2d 105 (1995). These purposes are not significantly different from those underlying the NGI statute: "to treat the NGI acquittee's mental illness and to protect the acquittee and society from the acquittee's potential dangerousness." *See Szulczewski*, 216 Wis. 2d at 504.[5] Thus, because of the close correspondence between the statutes and legislative purposes at issue in *Szulczewski* and those in the instant case, the supreme court's rationale in *Szulczewski* applies with equal force here.

¶ 10.   A statutory interpretation *requiring* a court to stay a sentence, or *precluding* a court from doing so, during the period of a WIS. STAT. ch. 980 commitment, inevitably would "frustrate" certain statutory purposes in some cases. *See id.* at 504. In one case, depending on myriad factors including the seriousness of the crime, the length of the sentence, and the placement and pro-

---

[5] As noted, defense counsel, before the trial court, maintained that, for purposes of determining whether the court could stay the sentence, there were not significant distinctions between the circumstances of a defendant committed under WIS. STAT. § 971.17 and WIS. STAT. ch. 980. On appeal, White suggests only one distinction. He writes: "A section 971.17 commitment is always for a finite length of time. A chapter 980 commitment is potentially for the entirety of the committee's life." White fails, however, to explain why this possible distinction would make any difference. Moreover, as the State points out, even this suggested distinction disappears in the case of a defendant committed under § 971.17 for first-degree intentional homicide. *See* WIS. STAT. § 971.17(1).

gress of the defendant under ch. 980, a court could reasonably conclude that execution of the sentence should be stayed until supervised release or discharge. In another case, based on these and perhaps other factors, a court could reasonably conclude that the sentence should be served immediately.[6]

¶ 11. Accordingly, we conclude that a circuit court has authority to stay a sentence for "legal cause"

---

[6] Similarly, in *Szulczewski*, the supreme court commented:

> This discretion is similar to the discretion a circuit court exercises when making any sentence decision. In exercising its discretion, a circuit court may determine that the purposes of both the criminal and NGI statutes are best served by allowing the defendant to remain in a mental institution pursuant to the NGI acquittal. In these cases Wis. Stat. § 971.17 is given primary importance. This disposition may be appropriate, for example, in cases involving less serious crimes or defendants with serious mental illness or special treatment needs.
>
> In other cases a circuit court may determine that the goals of retribution, rehabilitation, deterrence and segregation are best served by committing the defendant to the custody of the DOC upon sentencing. This disposition may be appropriate, for example, in cases where the crime requires severe punishment, where there is a need to deter both the particular defendant and the general NGI population, and where the defendant needs to be segregated from the general NGI population.

*Szulczewski*, 216 Wis. 2d at 507. Thus, in exercising such discretion in circumstances like those of the instant case, a sentencing court would have to consider "the purposes of both the criminal and [ch. 980] statutes," just as a court exercising discretion in circumstances like those in *Szulczewski* would have to consider "the purposes of both the criminal and NGI statutes," *see id.* Therefore, a court could not stay a sentence simply "for the purpose of personally accommodating a criminal defendant." *State v. Braun*, 100 Wis. 2d 77, 85, 301 N.W.2d 180 (1981). "A stay for the purpose of personally accommodating a defendant . . . is not a stay for legal cause." *Szulczewski*, 216 Wis. 2d at 506.

707

during the period of a defendant's commitment under WIS. STAT. ch. 980. We also conclude that a circuit court, in deciding whether to stay a sentence during the period of a ch. 980 commitment, must exercise discretion on a case-by-case basis in order to balance and give effect to the goals of both mental health treatment and incarceration. Just as the supreme court concluded, with respect to WIS. STAT. §§ 973.15(1), (8)(a) and 971.17, we conclude, with respect to § 973.15(1), (8)(a) and ch. 980, that a sentencing court must "make a reasoned determination about imposing or staying a prison sentence on the basis of the facts of each case." *Szulczewski*, 216 Wis. 2d at 505.

*By the Court.*—Judgment and order affirmed.