In re the Commitment of Ronald Ransdell:

State of Wisconsin, Petitioner-Respondent,

v.

Ronald Ransdell, Respondent-Appellant.†

Court of Appeals

*No. 00–2224. Submitted on briefs July 3, 2001.—Decided August 7, 2001.*

2001 WI App 202

(Also reported in 634 N.W.2d 871.)

† Petition to review filed.

On behalf of the respondent-appellant, the cause was submitted on the briefs of *Ellen Henak*, assistant state public defender of Milwaukee.

On behalf of the petitioner-respondent, the cause was submitted on the brief of *James E. Doyle*, attorney general, and *Warren D. Weinstein*, assistant attorney general.

Before Wedemeyer, P.J., Fine and Schudson, JJ.

¶ 1. FINE, J. Ronald Ransdell appeals from a judgment and an order finding him to be a sexually violent person under WIS. STAT. ch. 980, and committing him to institutional care pursuant to WIS.

---

[1] Unless otherwise noted, all references to WIS. STAT. § 980.06 and the other provisions of Chapter 980 are to the 1999–2000 edition of the Wisconsin Statutes.

STAT. § 980.06 (1999–2000).[1] His sole claim on appeal is that § 980.06 deprives him of substantive due process because it, unlike its predecessor provision, requires an automatic initial commitment to "institutional care." We affirm.

¶ 2. WISCONSIN STAT. § 980.06 provides:

> If a court or jury determines that the person who is the subject of a petition under s. 980.02 is a sexually violent person, the court shall order the person to be committed to the custody of the department for control, care and treatment until such time as the person is no longer a sexually violent person. A commitment order under this section shall specify that the person be placed in institutional care.[2]

This section was amended into its present form by 1999 Wis. Act § 3223h. It applies to commitment orders under WIS. STAT. ch. 980 entered on or after October 29, 1999. 1999 Wis. Act 9, § 9323(2)(ag). Placement "in institutional care" is at a "secure mental health unit or facility." WIS. STAT. § 980.065(1m). The trial court's judgment and order from which this appeal is taken was entered on June 8, 2000.

¶ 3. Before the 1999 amendment of WIS. STAT. § 980.06, the circuit court was directed to determine whether a person found to be a sexually violent person should either be placed in a secure facility or be permitted supervised release. WIS. STAT. § 980.06(2)(b) (1997–1998) ("An order for commitment under this section shall specify either institutional care or supervised release.").[3] Although someone found to be a sexu-

---

[2] The "department" is the Department of Health and Family Services. WIS. STAT. § 980.01(1).

[3] WISCONSIN STAT. § 980.06(2)(b) (1997–1998) provided in full:

ally violent person must first be "placed in institutional care," § 980.06, that placement and the underlying commitment are subject to review:

> • A person committed under WIS. STAT. § 980.06 "may petition the committing court for discharge *at any time,* but if a person has previously filed a petition for discharge without the secretary's approval and the court determined, either upon review of the

An order for commitment under this section shall specify either institutional care or supervised release. In determining whether commitment shall be for institutional care or for supervised release, the court may consider, without limitation because of enumeration, the nature and circumstances of the behavior that was the basis of the allegation in the petition under s. 980.02(2)(a), the person's mental history and present mental condition, where the person will live, how the person will support himself or herself, and what arrangements are available to ensure that the person has access to and will participate in necessary treatment, including pharmacological treatment using an antiandrogen or the chemical equivalent of an antiandrogen if the person is a serious child sex offender. In deciding whether to order supervised release of person who is a serious child sex offender, the court may not consider, as a factor in making its decision, that the person is a proper subject for pharmacological treatment using an antiandrogen or the chemical equivalent of an antiandrogen or that the person is willing to participate in pharmacological treatment using an antiandrogen or the chemical equivalent of an antiandrogen. The department shall arrange for control, care and treatment of the person in the least restrictive manner consistent with the requirements of the person and in accordance with the court's commitment order.

The criteria that were set out in WIS. STAT. § 980.06(2)(b) (1997–1998) are now in WIS. STAT. § 980.08(4), which provides that the circuit court "shall grant the petition [for supervised release] unless the state proves by clear and convincing evidence that the person is still a sexually violent person and that it is still substantially probable that the person will engage in acts of sexual violence if the person is not continued in institutional care."

617

petition or following a hearing, that the person's petition was frivolous or that the person was still a sexually violent person, then the court shall deny any subsequent petition under this section without a hearing unless the petition contains facts upon which a court could find that the condition of the person had so changed that a hearing was warranted." WIS. STAT. § 980.10. (Emphasis added.)[4] The hearing on the petition is held pursuant to WIS. STAT. § 980.09(2)(b). Section 980.09(2)(a) also permits a person committed under § 980.06 to "petition the committing court for discharge from custody or supervision without the secretary's approval."

- "The director of the facility at which [a person found to be a sexually violent person] is placed may file a petition [to modify an order of commitment by authorizing supervised release] on the person's behalf *at any time*." WIS. STAT. § 980.08(1). (Emphasis added.)

- A court committing a person under WIS. STAT. § 980.06 has the discretion to "order a reexamination of the person *at any time* during the period in which the person is subject to the commitment order." WIS. STAT. § 980.07(3). (Emphasis added.)

- "If a person has been committed under s. 980.06 and has not been discharged under s. 980.09, the department shall conduct an examination of his or her mental condition within 6 months after an initial commitment under s. 980.06 and again thereafter at least once each 12 months for the purpose of determining whether the person has made sufficient progress for the court to consider whether the per-

---

[4] The "secretary" is the secretary of the Department of Health and Family Services. WIS. STAT. § 980.01(4).

son should be placed on supervised release or discharged." Wɪs. Stat. § 980.07(1).[5]

- A person committed under Wɪs. Stat. § 980.06 may file a petition for discharge "[i]f the secretary determines *at any time*" that the person "is no longer a sexually violent person." Wɪs. Stat. § 980.09(1). (Emphasis added.)

- A person committed pursuant to § 980.06 "may petition the committing court to modify its order by authorizing supervised release if at least 18 months have elapsed since the initial commitment order was entered or at least 6 months have elapsed since the most recent release petition was denied or the most recent order for supervised release was revoked." Wɪs. Stat. § 980.08(1).

¶ 4. We examine Ransdell's contention that § 980.06 deprives him of his right to due process against the background of these provisions and the applicable law.

¶ 5. A person contending that a statute is unconstitutional has a heavy burden; he or she must establish beyond a reasonable doubt that the statute is constitutionally infirm, and we are required to give to the statute every reasonable presumption in favor of its

---

[5] In connection with the reexamination required by Wɪs. Stat. § 980.07(1), "the person who has been committed may retain or seek to have the court appoint an examiner as provided under s. 980.03(4)," § 980.07(1), and an indigent person has an absolute right to the appointment of an expert, Wɪs. Stat. § 980.03(4) ("If the person is indigent, the court shall, upon the person's request, appoint a qualified and available expert or professional person to perform an examination and participate in the trial or other proceeding on the person's behalf.").

validity. *State v. Carpenter*, 197 Wis. 2d 252, 263–264, 541 N.W.2d 105, 109 (1995), *cert. denied sub nom. Schmidt v. Wisconsin*, 521 U.S. 1118.[6] Our review is *de novo. State v. Post*, 197 Wis. 2d 279, 301, 541 N.W.2d 115, 121 (1995), *cert. denied*, 521 U.S. 1118. In assessing whether a statute that restricts a person's liberty interests, as does WIS. STAT. ch. 980, passes due-process muster we apply a strict-scrutiny test—that is, we have to determine whether the statute "further[s] a compelling state interest and [is] narrowly tailored to serve that interest." *Id.*, 197 Wis. 2d at 302, 541 N.W.2d at 122. Additionally, " 'due process requires that the nature and duration of commitment bear some reasonable relation to the purpose for which the individual is committed.' " *Post*, 197 Wis. 2d at 313, 541 N.W.2d at 126 (quoting *Jackson v. Indiana*, 406 U.S. 715, 738 (1972)).

¶ 6. The government may confine a person if it shows " 'by clear and convincing evidence that the individual is mentally ill and dangerous.' " *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992) (quoted source omitted). The mental illness, however, need only rise to the level of "mental abnormality," *Kansas v. Hendricks*, 521 U.S. 346, 356 (1997), or, as denominated in WIS. STAT. ch. 980, "mental disorder," *Post*, 197 Wis. 2d at 303–307, 541 N.W.2d at 122–124.[7] "The key to the constitutionality of the definition of mental disorder in chapter 980

---

[6] We have previously examined the history of the longstanding rule that statutes are presumed to be constitutional and that a party claiming that a statute is constitutionally infirm prove that infirmity beyond a reasonable doubt. *Guzman v. St. Francis Hospital, Inc.*, 2001 WI App. 21 ¶ 4 n.3, 240 Wis. 2d 559, 568 n.3, 623 N.W.2d 776, 781 n.3 (Ct. App. 2000).

[7] Chapter 980 defines a "sexually violent person" as:

is that it requires a nexus—persons will not fall within chapter 980's reach unless they are diagnosed with a disorder that has the specific effect of predisposing them to engage in acts of sexual violence." *Id.*, 197 Wis. 2d at 306, 541 N.W.2d at 124. As *Hendricks* recognized, "under the appropriate circumstances and when accompanied by proper procedures, incapacitation may be a legitimate end of the civil law." 521 U.S. at 365–366. *See also id.*, 521 U.S. at 357 ("It thus cannot be said that the involuntary civil commitment of a limited subclass of dangerous persons is contrary to our understanding of ordered liberty."). A person may not be committed under WIS. STAT. § 980.06, however, unless it is proved beyond a reasonable doubt that, among other things, the person "is dangerous to others because the person's mental disorder creates a substantial probability that he or she will engage in acts of sexual violence." WIS. STAT. §§ 980.02(2)(c), 980.05(3)(a).

██

¶ 7. Chapter 980 advances two "legitimate and compelling" state interests: "to protect the community from the dangerously mentally disordered and to provide care and treatment to those with mental disorders that predispose them to sexual violence." *Post*, 197 Wis.

> [A] person who has been convicted of a sexually violent offense, has been adjudicated delinquent for a sexually violent offense, or has been found not guilty of or not responsible for a sexually violent offense by reason of insanity or mental disease, defect or illness, and who is dangerous because he or she suffers from a mental disorder that makes it substantially probable that the person will engage in acts of sexual violence.

WIS. STAT. § 980.01(7). "Mental disorder" is defined as "a congenital or acquired condition affecting the emotional or volitional capacity that predisposes a person to engage in acts of sexual violence." WIS. STAT. § 980.01(2).

2d at 302–303, 541 N.W.2d at 122. *Post* held that chapter 980 was a civil statute that did not violate the due-process rights of those committed under its procedures. *Id.*, 197 Wis. 2d at 301–317, 541 N.W.2d at 121–128. As we have seen, Ransdell argues that the legislation that now requires an *initial* placement "in institutional care," Wis. Stat. § 980.06, is an incremental deprivation that crosses the due-process line. Significantly, however, he does not contend that his special circumstances make § 980.06 infirm as applied to him; rather, Ransdell argues that § 980.06 is infirm on its face. *Cf. Seling v. Young*, 121 S. Ct. 727, 735, (2001) (an "as-applied analysis" is unworkable in determining whether commitment scheme is civil or criminal for double-jeopardy and *ex post facto* purposes).

¶ 8. Although *Post* was decided before the 1999 amendment of § 980.06 challenged here, it recognized that "[c]ommitment in a secure setting that provides specialized treatment for sexual offenders serves both to protect society and to treat the individual." *Id.*, 197 Wis. 2d at 314, 541 N.W.2d at 127. As with the legislature's constitutional policy determination that the safety of innocent persons in society warrants the finely tuned procedures in Wis. Stat. ch. 980 that permit the incapacitation of sexually violent persons, we see nothing that prevents the legislature from requiring that the person first undergo initial evaluation and initial treatment in an institutional setting before any decisions are made as to whether that person is suitable for supervised release. This is a reasonable policy determination that the legislature has the constitutional authority to make—the initial inpatient evaluation and treatment has a " 'reasonable relation to the purpose for which the individual is committed' " to the Department as a sexually violent person. *See Post*,

197 Wis. 2d at 313, 541 N.W.2d at 126 (quoted source omitted). Thus, *State v. Field*, 118 Wis. 2d 269, 279–282, 347 N.W.2d 365, 370–371 (1984), upheld the automatic-commitment procedure in Wis. Stat. § 971.17(1) (1981–82) against a due-process challenge, noting that a finding beyond a reasonable doubt that the person committed a crime "is indicative of dangerousness," and that an automatic commitment not only permits the person to "receive a thorough and accurate evaluation of his or her present mental condition," but also protects society. By the same token here, Ransdell has been found beyond a reasonable doubt to be a currently dangerous sexually violent person, and the dual interests of protecting the public and ensuring accurate assessment and effective treatment are at least as important here (if not more important, given the *current* finding of dangerousness) as they were in *Field*.

¶ 9. Moreover, as we have seen, there are many safeguards against arbitrary confinement: the director of the facility where the person is placed can petition the court to authorize a supervised release "at any time," Wis. Stat. § 980.08(1); the person may seek discharge at any time the secretary of the Department of Health and Family Services determines that the person "is no longer a sexually violent person," Wis. Stat. § 980.09(1); the person may file an initial petition for discharge "at any time," Wis. Stat. § 980.10; the committing court may order a reexamination of the person "at any time," Wis. Stat. § 980.07(3); there is a mandatory examination of the person's "mental condition within 6 months after an initial commitment" and at least every twelve months thereafter "for the purpose of determining whether the person has made sufficient progress for the court to consider whether the person should be placed on supervised release or discharged,"

Wɪs. Sᴛᴀᴛ. § 980.07(1); and, finally, after the expiration of eighteen months of the initial commitment order, the person may file a petition seeking supervised release, Wɪs. Sᴛᴀᴛ. § 980.08(1).

■

¶ 10. Applying the strict-scrutiny analysis to the incremental infringement by Wɪs. Sᴛᴀᴛ. § 980.06 on the liberty interests of those who have a sexually violent, predatory past and who are currently suffering from a mental disorder that makes them dangerous sexual predators, we cannot say that Ransdell has carried his burden of proving beyond a reasonable doubt that amended § 980.06 violates due process.

*By the Court.*—Judgment and order affirmed.

¶ 11. SCHUDSON, J. (*dissenting*). Although I believe the majority opinion is reasonable in many respects, I am unable to determine whether, under *State v. Post*, 197 Wis.2d 279, 541 N.W.2d 115 (1995), it is correct.

¶ 12. In *Post*, the supreme court, concluding that the predecessor statute to the one challenged in this appeal was constitutional, explained:

> The purposes of commitment under chapter 980 have already been identified as the protection of the community and the treatment of persons suffering from disorders that predispose them to commit sexually violent acts. The nature of the commitment (to the custody of DHSS with *potential* confinement in a secure mental health facility) is consistent with both purposes.
>
> The language of the statute provides the best evidence of this reasonable relationship. Individuals found to be sexually violent persons are *committed to the custody of DHSS "for control, care and treatment" in*

*"the least restrictive manner consistent with the require-
ments of the person and in accordance with the court's
commitment order."*

*Id.* at 313 (emphases added; citations omitted).

¶ 13. Thus, the supreme court connected its ap-
proval of the predecessor statute to three conditions
absent from the revised statute:

(1) Commitment to the custody of DHSS would not
result in automatic confinement. Rather, the statute
was constitutional in part because it allowed only for
"potential" confinement among other options. *See id.*

(2) Confinement would not automatically be deemed
the appropriate initial placement. Rather, the statute
was constitutional in part because initial confinement
would only come about if it was " 'the least restrictive' "
option satisfying the statutory purposes.[1] *See id.*

(3) Confinement could not come about automatically by
legislative or administrative mandate. Rather, the stat-
ute was constitutional in part because any confinement
had to be ordered by the court. *See id.*

¶ 14. The current statute, failing to provide these
three safeguards to protect individuals from inappro-
priate confinement, may not satisfy the constitutional
standards the supreme court considered so essential in
*Post.* Therefore, I would have certified this appeal to the
supreme court and, accordingly, I respectfully dissent.

[1] And indeed, confinement was not automatic. In its brief to
this court, the State advises that during the six-year period of
the operation of the predecessor statute, courts ordered "initial
placements in the community" for approximately fourteen indi-
viduals.