In re the Commitment of Isaac H. Williams:

State of Wisconsin, Petitioner-Respondent,

v.

Isaac H. Williams, Respondent-Appellant.†
[Case No. 00–2899.]

In re the Commitment of Willie Hogan:

State of Wisconsin, Petitioner-Respondent,

v.

Willie Hogan, Respondent-Appellant.†
[Case No. 00–3122.]

Court of Appeals

*Nos. 00–2899, 00–3122. Submitted on briefs October 2, 2001.—
Decided October 23, 2001.*

2001 WI App 263

(Also reported in 637 N.W.2d 791.)

† Petition to review filed.

1

On behalf of the respondent-appellant, Isaac H. Williams, the cause was submitted on the brief of *Donna L. Hintze*, assistant state public defender of Madison.

On behalf of the respondent-appellant, Willie Hogan, the cause was submitted on the briefs of *Donald T. Lang*, assistant state public defender of Madison.

On behalf of the petitioner-respondent, the cause was submitted on the briefs of *James E. Doyle*, attorney general, and *Diane M. Welsh*, assistant attorney general.

Before Wedemeyer, P.J., Fine and Curley, JJ.

¶ 1. FINE, J. Isaac H. Williams and Willie Hogan appeal separately from a judgment (Williams) and orders (Williams and Hogan) entered under Wis. Stat. ch. 980, committing them to institutional care

pursuant to WIS. STAT. § 980.06 (1999–2000).[1] Their appeals raise identical issues. Accordingly, we consolidate their appeals for decision. We affirm.

## I.

¶ 2. Both Hogan and Williams contend that two changes made to WIS. STAT. ch. 980 violate their constitutional rights to equal protection and to substantive due process. They also claim that the changes should not be applied to them because the petitions alleging that they were sexually violent persons subject to chapter-980 commitment were filed before the effective date of the changes. Their complaints focus on WIS. STAT. §§ 980.06 and 980.08(1).

WISCONSIN STAT. § 980.06 provides:

> If a court or jury determines that the person who is the subject of a petition under s. 980.02 is a sexually violent person, the court shall order the person to be committed to the custody of the department for control, care and treatment until such time as the person is no longer a sexually violent person. A commitment order under this section shall specify that the person be placed in institutional care.[2]

This section was amended into its present form by 1999 Wis. Act 9, § 3223h. It applies to commitment orders under WIS. STAT. ch. 980 on judgments entered on or after October 29, 1999. 1999 Wis. Act 9, § 9323(2)(ag). Placement in "institutional care" is at a "secure mental health unit or facility." WIS. STAT. § 980.065(2). Before

---

[1] Unless otherwise noted, all references to the provisions of WIS. STAT. ch. 980 are to the 1999–2000 edition of the Wisconsin Statutes.

[2] The "Department" is the Department of Health and Family Services. WIS. STAT. § 980.01(1).

6

the 1999 amendment, the circuit court was directed to determine whether someone found to be a sexually violent person should either be placed in a secure facility or be permitted supervised release. WIS. STAT. § 980.06(2)(b) (1997–1998) ("An order for commitment under this section shall specify either institutional care or supervised release.").

¶ 3. WISCONSIN STAT. § 980.08(1) requires that a person committed as a sexually violent person must wait eighteen months before petitioning the court for supervised release, rather than the six-month period under the earlier version, WIS. STAT. § 980.08(1) (1997–1998). It was amended by 1999 Wis. Act 9, § 3232p, also applicable to commitment orders on judgments entered on or after October 29, 1999. 1999 Wis. Act 9, § 9323(2)(bg).

## II.

¶ 4. As we pointed out in *State v. Ransdell*, 2001 WI App 202, constitutional challenges of statutes face a formidable task.

> A person contending that a statute is unconstitutional has a heavy burden; he or she must establish beyond a reasonable doubt that the statute is constitutionally infirm, and we are required to give to the statute every reasonable presumption in favor of its validity. *State v. Carpenter*, 197 Wis. 2d 252, 263–264, 541 N.W.2d 105, 109 (1995), *cert. denied sub nom. Schmidt v. Wisconsin*, 521 U.S. 1118. Our review is *de novo. State v. Post*, 197 Wis. 2d 279, 301, 541 N.W.2d 115, 121 (1995), *cert. denied,* 521 U.S. 1118.

*Ransdell*, 2001 WI App 202 at ¶ 5 (footnote omitted). We discuss Williams's and Hogan's constitutional challenges in turn.

## A. *Substantive Due Process.*

¶ 5. We have already upheld the automatic-commitment provision of WIS. STAT. § 980.06 against a substantive due-process challenge. *Ransdell*, 2001 WI App 202 at ¶¶ 5–10. So we turn to the requirement in WIS. STAT. § 980.08(1) that a person committed as a sexually violent person must wait eighteen months before being able to petition for supervised release.

¶ 6. As in *Ransdell*, application of the strict-scrutiny test is appropriate, given the liberty interests involved. *Id.*, 2001 WI App 202 at ¶ 5. In order to survive a strict-scrutiny due-process analysis, the restriction must "further a compelling state interest and be narrowly tailored to serve that interest." *Post*, 197 Wis. 2d at 302, 541 N.W.2d at 122.

¶ 7. WISCONSIN STAT. ch. 980 "advances two 'legitimate and compelling' state interests: 'to protect the community from the dangerously mentally disordered and to provide care and treatment to those with mental disorders that predispose them to sexual violence.' " *Ransdell*, 2001 WI App 202 at ¶ 7 (quoting from *Post*, 197 Wis. 2d at 302–303, 541 N.W.2d at 122). A key to our analysis of whether expansion of the initial waiting period from six months to eighteen months before someone committed as a sexually violent person to institutional care can formally petition for supervised release is that no one may be so committed unless he or she is found beyond a reasonable doubt to:

- have been previously convicted of a "sexually violent offense"; and

- be currently "dangerous because he or she suf-

8

fers from a mental disorder that makes it substantially probable that the person will engage in acts of sexual violence."

Wis. Stat. § 980.01(7).[3] Put another way, and in a phrase that is well-known in the law, albeit largely in other contexts, no one can be committed as a sexually violent person under chapter 980 unless he or she is a clear and present danger to others in society—shown not only by a prior conviction (or the equivalent) but also by a *significant current risk* to commit more crimes of sexual violence.[4] Thus, as we pointed out in *Ransdell*,

[3] The "conviction" may also be the result of either a juvenile delinquency adjudication or a finding of criminal non-responsibility under Wis. Stat. §§ 971.15 and 971.165. Wis. Stat. § 980.01(7). Section 980.01(7) provides in full:

"Sexually violent person" means a person who has been convicted of a sexually violent offense, has been adjudicated delinquent for a sexually violent offense, or has been found not guilty of or not responsible for a sexually violent offense by reason of insanity or mental disease, defect or illness, and who is dangerous because he or she suffers from a mental disorder that makes it substantially probable that the person will engage in acts of sexual violence.

[4] The phrase "clear and present danger" was, apparently first used by Justice Oliver Wendell Holmes, Jr., in *Schenck v. United States*, 249 U.S. 47, 52 (1919), which upheld a conviction under the Federal Espionage Act of 1917, 40 Stat. 217, for sending anti-war leaflets to men who had been conscripted into the armed forces of the United States during World War I. *Id.*, 249 U.S. at 48–49, 50–51. It has also been used outside of the First-Amendment context to describe the threat posed to society by some criminals. *See Martinez v. California*, 444 U.S. 277, 279–280, 283 (1980) (upholding the statutory immunity of admittedly grossly negligent parole officials who improperly paroled a man committed to a state mental hospital as a " 'Mentally Disordered Sex Offender not amenable to treat-

the initial mandatory commitment—"requiring that the person first undergo initial evaluation and initial treatment in an institutional setting before any decisions are made as to whether that person is suitable for supervised release"—directed by WIS. STAT. § 980.06, passes strict-scrutiny due-process muster. *Ransdell* 2001 WI App 202 at ¶ 8. We also believe that adding twelve months to the time before which a person committed as a sexually violent person can formally petition for supervised release similarly survives constitutional challenge.

¶ 8. Someone found to be a sexually violent person beyond a reasonable doubt is "committed to the custody" of the Department of Health and Family Services until he or she "is no longer a sexually violent person." WIS. STAT. § 980.06. As noted, the initial "commitment order" must "specify that the person be placed in institutional care." *Id*. Although someone committed as a sexually violent person must now wait eighteen months before formally petitioning the committing court to be placed in the community on supervised release, WIS. STAT. § 980.08(1), rather than the six-month period under the earlier version of that section, the committing court can *always* consider supervised release *whenever* the committed person seeks discharge, WIS. STAT. §§ 980.09(1)(c) and 980.09(2)(c), *and the committed person may file an initial petition for discharge "at any time."* WIS. STAT. § 980.10 (emphasis

---

ment'" who later brutally tortured, raped, and murdered a fifteen-year-old girl; assuming for the decision that the officials either knew of should have known that release of the man "created a clear and present danger" that he would do what he did).

added).[5] One of three things happens after the person files a petition for discharge:

- the person shall be discharged from custody if he or she petitions "the committing court for discharge," and the State does not carry its burden of "proving by clear and convincing evidence that the petitioner is still a sexually violent person." WIS. STAT. §§ 980.09(1)(a) and 980.09(1)(b).[6]

---

[5] WISCONSIN STAT. §§ 980.09(1)(c) and 980.09(2)(c) are identical and they read in full:

If the court is satisfied that the state has not met its burden of proof under par. (b), the petitioner shall be discharged from the custody or supervision of the department. If the court is satisfied that the state has met its burden of proof under par. (b), the court may proceed to determine, using the criterion specified in s. 980.08(4), whether to modify the petitioner's existing commitment order by authorizing supervised release.

WISCONSIN STAT. § 980.10 reads in full:

**Additional discharge petitions.** In addition to the procedures under s. 980.09, a committed person may petition the committing court for discharge at any time, but if a person has previously filed a petition for discharge without the secretary's approval and the court determined, either upon review of the petition or following a hearing, that the person's petition was frivolous or that the person was still a sexually violent person, then the court shall deny any subsequent petition under this section without a hearing unless the petition contains facts upon which a court could find that the condition of the person had so changed that a hearing was warranted. If the court finds that a hearing is warranted, the court shall set a probable cause hearing in accordance with s. 980.09(2)(a) and continue proceedings under s. 980.09(2)(b), if appropriate. If the person has not previously filed a petition for discharge without the secretary's approval, the court shall set a probable cause hearing in accordance with s. 980.09(2)(a) and continue proceedings under s. 980.09(2)(b), if appropriate.

[6] WISCONSIN STAT. § 980.09 is divided into two parallel subsections: (1) and (2). Section 980.09(1) applies when the

11

- the person shall be placed on "supervised release" if the State carries its burden of proving by clear and convincing evidence that the person is still a sexually violent person, but the court determines, applying the criteria under Wis. Stat. § 980.08(4), that the State has not proven—again, by clear and convincing evidence—"that it is still substantially probable that the person will engage in acts of sexual violence if the person is not continued in institutional care," Wis. Stat. § 980.08(4).

- the person remains in institutional care if the State carries its dual burden of proving by clear and convincing evidence that the person is still a sexually violent person *and* that he or she will commit acts of sexual violence unless he or she is "continued in institutional care." Wis. Stat. § 980.08(4).

The Department must also "conduct an examination" of the "mental condition" of the committed person "within 6 months after an initial commitment under s. 980.06." Wis. Stat. § 980.07. The person being examined under § 980.07 *must* be told of his or her "right to petition

secretary of the Department of Health and Family Services determines that someone committed as a sexually violent person "is no longer a sexually violent person." Wis. Stat. § 980.09(1)(a). The secretary then "shall authorize the person to petition the committing court for discharge." *Id.* Section 980.09(2) permits the committed person to seek discharge "without the secretary's approval." Wis. Stat. § 980.09(2)(a). In either event, as noted in the main body of this opinion, the State must prove to the committing court's satisfaction by clear and convincing evidence that the person is both: still a sexually violent person *and* still in need of continued institutional care before the committing court may retain the person in institutional care.

the court for discharge over the secretary's objection." WIS. STAT. § 980.09(2)(a). Further, the committing court "may order a reexamination of the person at *any time* during the period in which the person is subject to the commitment order." WIS. STAT. § 980.07(3) (emphasis added).[7]

¶ 9. In light of all the safeguards and alternative methods by which a person committed under WIS. STAT. ch. 980 can obtain supervised release, we cannot say that Hogan and Williams have carried their burden of showing beyond a reasonable doubt that the marginal impediment to supervised release created by the amendment to WIS. STAT. § 980.08(1) (1997–1998) violates their right to substantive due process because § 980.08(1) now re-

---

[7] WISCONSIN STAT. § 980.07 reads in full:

**Periodic reexamination; report. (1)** If a person has been committed under s. 980.06 and has not been discharged under s. 980.09, the department shall conduct an examination of his or her mental condition within 6 months after an initial commitment under s. 980.06 and again thereafter at least once each 12 months for the purpose of determining whether the person has made sufficient progress for the court to consider whether the person should be placed on supervised release or discharged. At the time of a reexamination under this section, the person who has been committed may retain or seek to have the court appoint an examiner as provided under s. 980.03(4).

**(2)** Any examiner conducting an examination under this section shall prepare a written report of the examination no later than 30 days after the date of the examination. The examiner shall place a copy of the report in the person's medical records and shall provide a copy of the report to the court that committed the person under s. 980.06.

**(3)** Notwithstanding sub. (1), the court that committed a person under s. 980.06 may order a reexamination of the person at any time during the period in which the person is subject to the commitment order.

quires an additional twelve months before they may formally file a petition for supervised release.

B. *Equal Protection.*

¶ 10. Williams and Hogan also contend that the automatic-commitment provision in WIS. STAT. § 980.06, and the eighteen-month waiting requirement in WIS. STAT. § 980.08(1) violate their rights to equal protection of the laws because they are treated more harshly than are "similarly situated" persons committed under either WIS. STAT. ch. 51 or WIS. STAT. § 971.17. *Post* recognized that persons committed under WIS. STAT. ch. 980 and those committed under chapter 51 are "similarly situated" for equal-protection analysis. *Post,* 197 Wis. 2d at 318–319, 541 N.W.2d at 129. We will also assume without deciding that persons committed under chapter 980 are similarly situated to those committed under § 971.17, inasmuch as a prerequisite to commitments under both those provisions is a determination that the committed person is dangerous. *Cf. State v. White,* 2000 WI App 147, ¶ 9, 237 Wis. 2d 699, 705–706, 615 N.W.2d 667, 671 (decisions under statutes regulating those relieved of criminal responsibility because of mental disease or defect are persuasive to analyses under chapter 980).

¶ 11. The level of scrutiny used to analyze whether statutory schemes that deprive persons of liberty interests violate equal protection is unclear. *Post,* 197 Wis. 2d at 319–321, 541 N.W.2d at 129–130. We, like *Post,* will use the "strict scrutiny" standard without deciding that its application is required. *Id.,* 197 Wis. 2d.at 321, 541 N.W.2d at 130. In the context of an equal-protection challenge, the strict-scrutiny test means that "the State must prove that the classification is necessary to promote a 'compelling governmental

interest.' " *State v. Hezzie R.*, 219 Wis. 2d 848, 894, 580 N.W.2d 660, 677 (1998) (quoting from *Post*, 197 Wis. 2d at 319, 541 N.W.2d at 129). This does not mean, however, that there must be total congruence in the treatment of those who are similarly situated: "Equal protection does not require that all persons be dealt with identically, but it does require that a distinction made have some relevance to the purpose for which the classification is made." *Post*, 197 Wis. 2d at 321, 541 N.W.2d at 130 (quoted source omitted). Among the factors that will justify disparate approaches in the context of a case arising under Wis. Stat. ch. 980, are "[d]ifferences in difficulty of diagnosis, degree of dangerousness, and intrusiveness of treatment." *Id.*, 197 Wis. 2d at 322, 541 N.W.2d at 130. As we noted in Part A of this opinion, and as we explained in *Ransdell* in the context of a due-process analysis, the legislature has determined that those found to be sexually violent persons beyond a reasonable doubt under chapter 980 must "first undergo initial evaluation and initial treatment in an institutional setting before any decisions are made as to whether that person is suitable for supervised release," and that this is within the ambit of permitted legislative response to the profound risk to the public safety presented by sexually violent persons. *Ransdell*, 2001 WI App 202 at ¶ 8. We examine the equal-protection contentions asserted by Williams and Hogan against this background.

1. *Wis. Stat. ch. 51.*

¶ 12. Hogan and Williams point to the following to support their claim that those persons committed under Wis. Stat. ch. 51 are treated more leniently than those committed under Wis. Stat. ch. 980: (1) residents

of Wisconsin are permitted initial outpatient treatment, if appropriate, WIS. STAT. § 51.20(13)(a), and (2) any "first order of commitment" may not exceed six months, WIS. STAT. § 51.20(13)(g)1.

¶ 13. A person may be committed under WIS. STAT. ch. 51 if he or she is dangerous to others. WIS. STAT. § 51.20(1)(a)2.b. But, commitments under chapter 51 are also permitted for many reasons that do not implicate danger to others. WIS. STAT. § 51.20(1)(a)2.a., c.–e. In contrast, significant danger to others is the *only* justification for a commitment under WIS. STAT. ch. 980. Thus, persons committed under WIS. STAT. ch. 980 are more dangerous as a class than those committed under chapter 51. *Post,* 197 Wis. 2d at 322, 541 N.W.2d at 130 ("The legislature has determined that, as a class, persons predisposed to sexual violence are more likely to pose a higher level of danger to the community than do other classes of mentally ill or mentally disabled persons.").

¶ 14. Additionally, it is much more difficult to commit a person under WIS. STAT. ch. 980 than it is to commit someone under chapter 51. First, the burden of proof under chapter 51 is "clear and convincing evidence," WIS. STAT. § 51.20(13)(e). The burden of proof for an initial commitment under chapter 980 is "beyond a reasonable doubt." WIS. STAT. § 980.05(3). Second, a person against whom a chapter-980 petition has been filed has the right to a trial by a jury of twelve, all of whom must agree that he or she is a sexually violent person. WIS. STAT. §§ 980.03(3) and 980.05(2). On the other hand, a person may be committed under chapter 51 by a jury of six, and only five of the six need to agree to commit. WIS. STAT. §§ 51.20(11)(a) and 51.20(11)(b).

¶ 15. Finally, a person may be committed under WIS. STAT. ch. 51 because he or she is a danger to others

even though the factual predicates to that commitment may represent the first time that he or she has done something that "[e]vidences a substantial probability of physical harm to other individuals." Wɪs. Sᴛᴀᴛ. § 51.20(1)(a)2.b. On the other hand, a person committed under Wɪs. Sᴛᴀᴛ. ch. 980 has, by definition, not only *already* violated the rights of at least one victim by an act or acts of sexual violence, but, significantly, has also demonstrated that "previous treatment has proved ineffective." *Post*, 197 Wis. 2d at 309, 541 N.W.2d at 125.

¶ 16. Although Wɪs. Sᴛᴀᴛ. ch. 51 is more "lenient" with those who are subject to its provisions than is Wɪs. Sᴛᴀᴛ. ch. 980, the significant differences between the degree of danger posed by each of the two classes of persons, as well as the differences in what must be proven in order to commit under the two chapters, justify on a strict-scrutiny analysis the disparate, but narrowly tailored, procedures about which Hogan and Williams complain. *See Post*, 197 Wis. 2d at 322–323, 541 N.W.2d at 130 ("This heightened level of dangerousness and the unique treatment needs of sexually violent persons justify distinct legislative approaches to further the compelling governmental purpose of protection of the public.").

2. *Wɪs. Sᴛᴀᴛ. § 971.17.*

¶ 17. Hogan and Williams also complain that the automatic commitment required by Wɪs. Sᴛᴀᴛ. § 980.06 deprives them of equal protection of the laws because persons who have been acquitted by reason of mental disease or defect are entitled to an expedited hearing to determine whether they should be kept in "institutional care" or given "conditional release," by virtue of Wɪs. Sᴛᴀᴛ. §§ 971.17(2) and 971.17(3). The problem with

their attempted analogy, however, is that the law only *infers* current mental illness and dangerousness when a person is found to have violated the criminal law but to be not responsible for that violation because he or she had a mental disease or defect at the time. *See* Wis. Stat. § 971.15(1) ("A person is not responsible for criminal conduct if at the time of such conduct as a result of mental disease or defect the person lacked substantial capacity either to appreciate the wrongfulness of his or her conduct or conform his or her conduct to the requirements of law."); *State v. Field*, 118 Wis. 2d 269, 277–278, 347 N.W.2d 365, 369–370 (1984) (fact that person is found beyond a reasonable doubt to have committed a criminal act *"indicates* dangerousness," and "the insanity acquittal supports an *inference* of continuing mental illness") (emphasis added) (interpreting decision of the United States Supreme Court).

¶ 18. In contrast to the inferences that an acquittal by reason of mental disease or defect permits about the person's current mental state and current dangerousness, a person may not be committed under Wis. Stat. ch. 980 unless the State proves beyond a reasonable doubt both that the person actually "has a mental disorder" at the time of the trial on the petition for commitment, and is *then* actually "dangerous to others because the person's mental disorder creates a substantial probability that he or she will engage in acts of sexual violence." Wis. Stat. §§ 980.02(2)(b), 980.02(2)(c), and 908.05(3)(a). *See also State v. Carpenter*, 197 Wis. 2d 252, 274, 541 N.W.2d 105, 113 (1995) ("The legislative aim is not punishment but regulation of a present situation."). This is a critical distinction between the classes of persons committed under Wis. Stat. § 971.17 and those committed under chapter 980, and reflects the legislature's judgment that sexually violent persons, as a

class, are substantially more dangerous than those subject to the procedures in § 971.17. Thus, those who have "been found not guilty of or not responsible for a sexually violent offense by reason of insanity or mental disease" are subject to the more stringent levels of control and treatment under chapter 980. WIS. STAT. § 980.01(7).

¶ 19. Additionally, although a person committed under WIS. STAT. § 971.17(4) has the right to petition for "conditional release if at least 6 months have elapsed since the initial commitment order was entered," and, as noted, a person committed under WIS. STAT. ch. 980 must wait eighteen months before formally petitioning for supervised release, we have set out in the due-process portion of this opinion the plethora of protections and alternate routes to supervised release that are available to a person committed under chapter 980, not the least of which is being able to petition for discharge at any time without the approval of the secretary of the Department of Health and Family Services. *See* ¶¶ 7–9, *supra*. As also noted, the court may consider supervised release in connection with any petition for discharge. *See* ¶ 8, *supra*.

¶ 20. The differences in the procedures for initial commitment between WIS. STAT. ch. 980 and WIS. STAT. § 971.17 are based on real distinctions between the two statutory schemes and the interests served by each. On a strict-scrutiny analysis, the equal-protection rights of Hogan and Williams have not been violated by their automatic commitment under WIS. STAT. § 980.06 or by making them wait eighteen months before formally petitioning for supervised release.

## C. *Retroactivity.*

■■■■■■

¶ 21. Williams and Hogan assert that the automatic-commitment provision of Wis. Stat. § 980.06, and the eighteen-month period in § 980.08(1) deprive them of the procedures in effect when the petitions seeking their commitment under Wis. Stat. ch. 980 were filed. They rely principally on *Martin v. Richards*, 192 Wis. 2d 156, 531 N.W.2d 70 (1995), and *Neiman v. American National Property and Casualty Co.*, 2000 WI 83, 236 Wis. 2d 411, 613 N.W.2d 160, which held that the legislature's attempt to reduce (*Martin*) or increase (*Neiman*) damage-caps in tort cases where the claims had already accrued violated due process. *Martin*, 192 Wis. 2d at 199, 531 N.W.2d at 88; *Neiman*, 2000 WI 83 at ¶¶ 1–2, 8–31. Due process is not implicated, however, unless the changes are, in fact, retroactive. *Martin*, 192 Wis. 2d at 199, 531 N.W.2d at 88.

¶ 22. Here, as with Wis. Stat. ch. 980 generally, the changes about which Hogan and Williams complain are not retroactive; they are not designed to punish past acts, but, rather to treat those who are currently sexually violent persons. *See Carpenter*, 197 Wis. 2d at 274, 541 N.W.2d at 113 ("[T]he mere fact that a prior conviction is a predicate of the current sanction does not render the current sanction punishment for the past offense. The legislative aim is not punishment but regulation of a present situation.") (internal citation omitted; analyzing challenge that chapter 980 was an unlawful *ex post facto* act). Indeed, the very language of Wis. Stat. § 980.06 is clear that automatic commitment is not triggered unless and until there is the requisite finding about the person's current condition: "*If* a court or jury determines that the person who is the

subject of a petition under s. 980.02 *is* a sexually violent person, the court shall order the person to be committed . . . [and] placed in institutional care." (Emphasis added.) Thus, § 980.06 is not retroactive because it "first applies to initial commitment orders in cases in which judgment is entered under section 980.05(5) of the statutes on" October 29, 1999. 1999 Wis. Act 9, § 9323(2)(ag).[8]

¶ 23. The petition alleging that Hogan was a sexually violent person was filed in May of 1998. This was before the October 29, 1999, effective date of the new provisions. His trial, however, was in April of 2000, well after their effective date. Similarly, the petition alleging that Williams was a sexually violent person was filed in February of 1998. His trial in March of 2000 was also well after the effective date of the provisions. Thus, the determinations that triggered the applicability of the treatment facilitating provisions in WIS. STAT. §§ 980.06 and 980.08(1) to both Hogan and Williams came after the date of the sections initial applicability; it was then, and not before, that they were proven to be sexually violent persons subject to chapter 980. The sections are not being applied retroactively to them.[9]

---

[8] WISCONSIN STAT. § 980.05(5) provides, as material: "*If* the court or jury determines that the person who is the subject of a petition under s. 980.02 *is* a sexually violent person, the court shall enter a judgment on that finding and shall commit the person as provided under s. 980.06." (Emphasis added.)

[9] We express no opinion about a situation where a determination that subjects a person to the procedures of WIS. STAT. ch. 980 is made before the initial applicability of a change in those procedures but the judgment is entered after that date, and the act sets entry of the "judgment" as the critical date, as does 1999 Wis. Act 9 here.

21

### III.

¶ 24. For the reasons set out above, we conclude that application of Wis. Stat. §§ 980.06 and 980.08(1) to Hogan and Williams does not violate their rights to substantive due process or to equal protection of the laws. Accordingly, we affirm the trial courts in these matters, and also reject Hogan's request that his commitment under Wis. Stat. ch. "be vacated," inasmuch as that request is predicated on his contention that application of §§ 980.06 and 980.08(1) to him are unconstitutional.

*By the Court.*—Judgment and orders affirmed.