802 So.2d 1213 (2002)
Tywaun JACKSON, Petitioner,
v.
STATE of Florida, Respondent.
No. 2D01-941.
District Court of Appeal of Florida, Second District.
January 9, 2002.
*1214 Carey Haughwout, Public Defender, and Kenneth N. Johnson, Assistant Public Defender, West Palm Beach, for Petitioner.
Robert A. Butterworth, Attorney General, Tallahassee, and Jennifer R. Haymes, Assistant Attorney General, Tampa, for Respondent.
SILBERMAN, Judge.
Petitioner, Tywaun Jackson, has filed a petition for writ of habeas corpus or, in the alternative, a petition for writ of mandamus. We have jurisdiction pursuant to article V, section 4(b)(3), of the Florida Constitution and Florida Rule of Appellate Procedure 9.030(b)(3).[1] We deny the petition for writ of habeas corpus, and we deny in part and grant in part the petition for writ of mandamus.
On February 24, 2000, a jury found Jackson to be a sexually violent predator under section 394.917(2), Florida Statutes (1999). That statute is contained in part V of chapter 394, Florida Statutes (1999), entitled "Involuntary Civil Commitment of Sexually Violent Predators," hereinafter referred to as the Act.[2] On March 8, 2000, the trial court entered an order finding Jackson to be a sexually violent predator and committing him to the Department of Children and Family Services (the Department) for treatment.
The Act sets forth a procedure for commitment and includes provisions for the annual examination of committed persons and judicial review of their status. Section 394.918, Florida Statutes (1999), states, in pertinent part:
(1) A person committed under this part shall have an examination of his or *1215 her mental condition once every year or more frequently at the court's discretion. The person may retain or, if the person is indigent and so requests, the court may appoint, a qualified professional to examine the person.... The results of the examination shall be provided to the court that committed the person under this part. Upon receipt of the report, the court shall conduct a review of the person's status.
(2) The [Department of Children and Family Services] shall provide the person with annual written notice of the person's right to petition the court for release over the objection of the director of the facility where the person is housed. The notice must contain a waiver of rights. The director of the facility shall forward the notice and waiver form to the court.
(3) The court shall hold a limited hearing to determine whether there is probable cause to believe that the person's condition has so changed that it is safe for the person to be at large and that the person will not engage in acts of sexual violence if discharged.... If the court determines that there is probable cause to believe it is safe to release the person, the court shall set a trial before the court on the issue.
(4) ... At the hearing, the state bears the burden of proving, by clear and convincing evidence, that the person's mental condition remains such that it is not safe for the person to be at large and that, if released, the person is likely to engage in acts of sexual violence.
Jackson does not claim that the Act is unconstitutional.[3] Instead, he claims that he has been denied due process because of the following: (1) he was not examined as required by section 394.918(1); (2) he was not timely provided with written notice of his right to petition the committing court for release as required by section 394.918(2); and (3) the committing court did not conduct the limited probable cause hearing as required by section 394.918(3). Jackson argues that because of the alleged violations by respondents, he is entitled to release from commitment. In support, he cites Tanguay v. State, 782 So.2d 419 (Fla. 2d DCA 2001), and Kinder v. State, 779 So.2d 512 (Fla. 2d DCA 2000), review granted, 786 So.2d 1189 (Fla.2001).
In Tanguay, a person detained under the Act alleged that he was being illegally detained following the expiration of his criminal sentence because his commitment proceeding had not been timely filed. Tanguay, 782 So.2d at 421. This court ordered Tanguay's release noting that "the only adequate remedy to address the State's failure to comply with the requirements of the Act or to afford Tanguay even minimal constitutional protections is *1216 to order Tanguay's release from custody pending his commitment hearing." Id.
In Kinder, on the date that Kinder was scheduled to be released from prison, the State filed a petition seeking to have him committed under the Act. Kinder, 779 So.2d at 514. The trial court, at an ex parte hearing, found probable cause to believe that Kinder was a sexually violent predator and ordered that he be held pending a commitment hearing. When Kinder was later brought before the trial court, he moved to dismiss the commitment proceeding on the basis that he had not been timely brought to trial. Id. This court found that Kinder was improperly detained after the expiration of his prison sentence. We noted that the State failed to comply with the requirements of the Act and did not afford Kinder even minimal due process. Id. at 515. Because of the delay in conducting the initial commitment trial to determine whether Kinder was a sexually violent predator, Kinder's release was ordered. The opinion stated that release was "the only remedy that will adequately redress this violation." Id.
Tanguay and Kinder involved situations where an individual was being illegally detained under the Act because the initial commitment process had not been properly initiated or followed. Those cases do not control in the present situation because Jackson is not challenging the commitment procedure that was used. Rather, he claims that because of respondents' failure to comply with the Act's procedures, his due process rights have been violated. He asserts that his immediate release is the appropriate remedy for the violations. We cannot agree.[4]
Unlike the violations addressed in Tanguay and Kinder, the alleged violations of the Act's notice, examination, and review procedures are not the cause of Jackson's detention. Jackson is being legally detained as a result of a judicial determination, made pursuant to the Act, that he is a sexually violent predator. He is not entitled to release until the committing court concludes, following a probable cause determination and a trial, that the State failed to carry its burden to prove the required elements for continued commitment. See § 394.918(3)-(4), Fla. Stat. (1999).
Section 394.918 requires that a committed person's mental condition be examined at least once every year, that the person be given annual written notice of the right to petition the court for release (which notice must contain a waiver of rights), and that the committing court conduct a review of the person's status following receipt of the mental examination report. While the Department did not comply with the notice requirement until shortly after the anniversary of Jackson's commitment date and after the commencement of this proceeding, and while it appears that Jackson's mental condition must still be examined and the committing court must still review his status, we conclude that immediate release is not the appropriate *1217 relief. Accordingly, the petition for writ of habeas corpus is denied.
We next address Jackson's alternative request that a writ of mandamus be issued. Because the Department has remedied its failure to provide Jackson with the required notice and waiver of rights form, that portion of his claim is moot. See City of Winter Garden v. Norflor Constr. Corp., 396 So.2d 865, 866 (Fla. 5th DCA 1981). We therefore deny in part the petition for writ of mandamus.
As to issuance of a writ of mandamus to compel respondents to provide an examination of Jackson's mental condition, respondents argue that it is not the Department's burden to initiate the annual mental examination. Respondents contend that it is Jackson's responsibility to retain, or to ask the committing court to appoint, a qualified professional to conduct the annual mental examination for purposes of court review. We disagree and determine that Jackson is entitled to relief on this issue.
Section 394.918(1) establishes the requirement for an annual, or more frequent, examination of the committed person's mental condition. The committed person may retain a qualified professional to examine him or her, or, if indigent, the person may request that a qualified professional be appointed by the court. The results of the examination are to be provided to the court that committed the person, and the court shall conduct a review of the person's status under the Act. Id.
Section 394.918(2) describes the Department's obligation to give notice to the committed person and the committed person's right to petition the court for release. Section 394.918(3) addresses the requirement that a limited probable cause hearing be held; if the court determines that there is probable cause to believe it is safe to release the person, the issue is to be set for trial. Under section 394.918(4), the State has the burden to prove by clear and convincing evidence that the requirements for continuing commitment are met.
Read in its entirety, section 394.918 does not support respondents' position. To accept respondents' argument would mean that in the absence of any effort by the committed person to pursue an annual mental examination, no such examination would be required, no judicial review of the person's mental condition would occur, no probable cause determination would be made, and no review of the person's continuing commitment would occur.
Additionally, under respondents' interpretation of the Act, a committed person could effectively preclude his or her release by not seeking an examination of his or her mental condition. The person would remain committed even if the person could safely be at large and was no longer likely to engage in acts of sexual violence if discharged. The person would also remain committed if he or she was incapable of initiating the examination process and thus setting into motion the required judicial review.[5] A person who could not or would not initiate the examination process would potentially be subject to indefinite detention, at taxpayer expense, without any further examination or judicial review even though the person was no longer a threat.
Although the parties suggest different interpretations of section 394.918, whenever possible we must look to the plain language of the statute to determine *1218 its meaning. Levine v. Levine, 734 So.2d 1191, 1194 (Fla. 2d DCA 1999). Moreover, the statute's "plain and ordinary meaning must be given effect unless to do so would lead to an unreasonable or ridiculous result." City of Miami Beach v. Galbut, 626 So.2d 192, 193 (Fla.1993).
We find that the meaning of section 394.918 is discernable from its language. We read the language that a committed person "shall have an examination of his or her mental condition once every year or more frequently at the court's discretion" to be mandatory. The committed person may retain or ask for the appointment of a qualified professional to examine him or her, but in the absence of action by the committed person, it is the Department's obligation to timely initiate the examination of the committed person's mental condition.
The question that is not addressed by the Act is what remedy is available to a committed person who does not receive the required written notice or the examination of his or her mental condition within the time periods set forth in the statute. As discussed above, we do not agree with Jackson's argument that release is the required remedy. However, the issuing of a writ of mandamus is an appropriate remedy "to enforce an established legal right by compelling a public officer or agency to perform a duty required by law." Lee County v. State Farm Mut. Auto. Ins. Co., 634 So.2d 250, 251 (Fla. 2d DCA 1994). The petitioner must have a clear legal right, and the respondent must have an indisputable legal duty. Id. See also Huffman v. State, 26 Fla. L. Weekly S400, ___ So.2d ___, 2001 WL 617716 (Fla. June 7, 2000), revised opinion, 26 Fla. L. Weekly S741, ___ So.2d ___, 2001 WL 617716 (Fla. Nov. 1, 2001); Fasenmyer v. Wainwright, 230 So.2d 129, 130 (Fla.1969).
Under the Act, Jackson has a clear legal right to receive an annual notice of his right to petition the court for release, an annual examination of his mental condition, and judicial review of his continued commitment. The Department has the obligation to provide the annual notice to Jackson and an annual examination of Jackson's mental condition. While the required notice has already been given, issuing a writ of mandamus to compel the examination of Jackson's mental condition is an appropriate remedy. If the required examination of Jackson's mental condition has not been performed during the pendency of this proceeding, the Department is hereby directed to immediately undertake all necessary action to ensure that the mental examination is initiated and promptly completed and that the results are provided to the court that committed Jackson.[6]
Petition for writ of habeas corpus denied. Petition for writ of mandamus denied in part and granted in part.
CASANUEVA and STRINGER, JJ., Concur.
NOTES
[1] Pursuant to State ex rel. Vance v. Wellman, 222 So.2d 449 (Fla. 2d DCA 1969), a petition for an extraordinary writ should first be filed in the circuit court unless there is a compelling reason for invoking the original jurisdiction of the appellate court. We conclude that the issues raised in the petition are of sufficient importance to warrant this court exercising its original jurisdiction.
[2] The Act is commonly referred to as the "Jimmy Ryce Act." It was originally found in sections 916.31 to 916.49, Florida Statutes (Supp.1998), but was amended and renumbered by the legislature in chapter 99-222, Laws of Florida.
[3] We note that in Westerheide v. State, 767 So.2d 637 (Fla. 5th DCA 2000), review granted, 786 So.2d 1192 (Fla.2001), the Fifth District Court of Appeal held that the Act is civil in nature and does not violate the double jeopardy or ex post facto clauses of the Florida and United States Constitutions. 767 So.2d at 646-48, 659. The court in Westerheide applied the reasoning of the Supreme Court in Kansas v. Hendricks, 521 U.S. 346, 117 S.Ct. 2072, 138 L.Ed.2d 501 (1997), which analyzed the Kansas Sexually Violent Predator Act. Westerheide, 767 So.2d at 644-53. Additionally, in Seling v. Young, 531 U.S. 250, 121 S.Ct. 727, 148 L.Ed.2d 734 (2001), the Supreme Court rejected a claim that Washington State's Community Protection Act violated Young's constitutional double jeopardy and ex post facto guarantees because it was punitive as applied to him. The sexually violent predator acts reviewed in the Hendricks and Seling cases are similar to Florida's Act.
[4] Although we do not issue the requested writ of habeas corpus in this case, we note that because Jackson is confined in DeSoto County, which is within the territorial jurisdiction of this court, we have the constitutional authority to address the relief sought by him. See § 79.09, Fla. Stat. (1999); Alachua Reg'l Juvenile Det. Ctr. v. T.O., 684 So.2d 814, 816 (Fla.1996). We also have the constitutional authority to issue a writ of mandamus to compel a public officer or agency to perform a lawful duty owed to Jackson. See art. V, § 4(b)(3), Fla. Const.; Eichelberger v. Brueckheimer, 613 So.2d 1372, 1373 (Fla. 2d DCA 1993).
[5] The parties make mention of Jackson's "mental retardation" and his difficulty in understanding the notice documents relating to the annual mental examination, right to petition for release, and waiver of rights.
[6] This case is disturbing because there appears to be some question as to whether procedures are in place to ensure that committed persons receive the annual mental examinations and judicial review that are required under the Act. Were it not for the diligence of the public defender's office in monitoring Jackson's status, Jackson may have languished for an indeterminate period of time without further examination or judicial review. Although release is not warranted in this case, the possibility exists that under other circumstances release may be a required remedy. We are hopeful that since the initiation of this case appropriate procedures have been established to carry out the requirements of the Act.