STATE of Wisconsin EX REL. William E. MARBERRY,
Petitioner-Appellant,

v.

Phillip G. MACHT, Superintendent, Wisconsin Re-
source Center and Joseph S. Leean, Secretary,
Department of Health and Family Services,
Respondents-Respondents.†

Court of Appeals

*No. 99–2446. Oral argument January 15, 2002.—Decided
April 10, 2002.*

2002 WI App 133

(Also reported in 648 N.W.2d 522.)

† Petition to review granted 6-11-02.

691

■■■■■■■■■■■■■■

■■■■■■■■■■■■■■■■

■■■■■■■■■■■■■■

On behalf of the petitioner-appellant, there were briefs and oral argument by *Donald T. Lang*, assistant state public defender of Madison.

On behalf of the respondents-respondents, there was a brief by *Marguerite M. Moeller*, assistant attorney general, and *James E. Doyle*, attorney general. There was oral argument by *Marguerite M. Moeller*, assistant attorney general.

Before Nettesheim, P.J., Brown and Snyder, JJ.

¶ 1. SNYDER, J. In this case we are asked to determine whether the initial reexamination required by Wis. Stat. § 980.07 (1997–98)[1] for Wis. Stat. ch. 980 committed patients is mandatory or directory and to determine the appropriate remedy if the six-month time limit is violated.[2] William E. Marberry contends that both the hearing and stated time limit are mandatory and appeals from a circuit court order denying his

---

[1] All references to the Wisconsin Statutes are to the 1997–98 version unless otherwise noted.

[2] We certified the issues to the Wisconsin Supreme Court on August 2, 2000. The certification was accepted and then vacated and remanded to this court on March 13, 2001. We heard oral arguments on the issues on January 15, 2002.

habeas corpus petition. The State responds that the six-month time limit is directory or, in the alternative, that if the time limit is mandatory, the remedy is not release or discharge from the ch. 980 commitment. We hold that the § 980.07 six-month time limit for an initial reexamination is mandatory and that Marberry is entitled to release or discharge from his ch. 980 commitment. We therefore reverse the circuit court order and remand this matter for proceedings consistent with this opinion.

## BACKGROUND

¶ 2. The essential facts are undisputed. Marberry was committed as a sexually violent person on July 15, 1998, pursuant to Wis. Stat. § 980.06(1). Wisconsin Stat. § 980.07 requires a reexamination of Marberry's mental condition after his initial commitment and reads in relevant part:

> **Periodic reexamination; report. (1)** If a person has been committed under s. 980.06 and has not been discharged under s. 980.09, the department shall conduct an examination of his or her mental condition within 6 months after an initial commitment under s. 980.06 and again thereafter at least once each 12 months for the purpose of determining whether the person has made sufficient progress to be entitled to transfer to a less restrictive facility, to supervised release or to discharge. At the time of a reexamination under this section, the person who has been committed may retain or, if he or she is indigent and so requests, the court may appoint a qualified expert or a professional person to examine him or her.

¶ 3. The State concedes that the Department of Health and Family Services (DHFS) failed to conduct an initial reexamination of Marberry's mental condition

695

within the six months prior to January 15, 1999. On June 15, 1999, eleven months after the WIS. STAT. ch. 980 commitment, Marberry filed a petition for a writ of habeas corpus requesting to be discharged from the ch. 980 commitment because he had still not received the required WIS. STAT. § 980.07(1) initial reexamination.[3] The circuit court denied Marberry's petition and he appeals.

## ISSUE

¶ 4. Marberry and the State dispute whether the six-month time limit for an initial reexamination under WIS. STAT. § 980.07(1) is mandatory or directory. The parties also dispute the appropriate remedy if the time limit is mandatory.

## DISCUSSION

¶ 5. Whether the WIS. STAT. § 980.07(1) six-month time requirement for an initial reexamination of a committed person is discretionary or mandatory requires us to interpret § 980.07(1). Statutory interpretation is a question of law that we review de novo. *State v. Curiel*, 227 Wis. 2d 389, 404, 597 N.W.2d 697 (1999). The goal of statutory interpretation is to discern the intent of the legislature. *Jungbluth v. Hometown, Inc.*, 201 Wis. 2d 320, 327, 548 N.W.2d 519 (1996).

¶ 6. Marberry contends that the six-month reexamination time limit of WIS. STAT. § 980.07(1) is mandatory, relying on our holding in *State ex rel. Lockman*

---

[3] Marberry's WIS. STAT. § 980.07 reexamination was not commenced until June 29, 2000, almost two years after his initial commitment.

*v. Gerhardstein,* 107 Wis. 2d 325, 320 N.W.2d 27 (Ct. App. 1982). In *Lockman,* a Wis. Stat. ch. 51 patient was not provided a final commitment hearing within fourteen days of her detention as required by Wis. Stat. § 51.20(7)(c).[4] *Lockman,* 107 Wis. 2d at 326–27. We held that the § 51.20(7)(c) fourteen-day time limit is mandatory and that it could not be varied at the discretion of the trial court; consequently, we ordered Lockman released. *See Lockman,* 107 Wis. 2d at 330.[5]

¶ 7. The State contends that the six-month time limit of Wis. Stat. § 980.07(1) is directory, citing to *State v. R.R.E.,* 162 Wis. 2d 698, 470 N.W.2d 283 (1991), in support. R.R.E. was acquitted of second-degree murder and attempted murder by reason of mental disease or defect (NGI) and was committed under Wis. Stat. § 971.17; he later moved for a reexamination of his mental condition as provided in Wis. Stat. § 51.20(16)(c). *R.R.E.,* 162 Wis. 2d at 703. Section 51.20(16)(c) requires a hearing within thirty days of receipt of a reexamination petition if a hearing was not

---

[4] Wisconsin Stat. § 51.20(7)(c) states that if there is probable cause found to believe that allegations support a Wis. Stat. ch. 51 detention, the court "shall schedule the matter for a hearing within 14 days from the time of detention of the subject individual . . . ."

[5] Marberry also cites to *N.N. v. County of Dane,* 140 Wis. 2d 64, 409 N.W.2d 388 (Ct. App. 1987), in support of his argument. *N.N.* is a Wis. Stat. ch. 55 commitment case where we held that the circuit court lost jurisdiction and ordered N.N.'s release because a hearing for permanent placement was not held within thirty days of a temporary placement order. *N.N.,* 140 Wis. 2d at 69–70; *see also* Wis. Stat. § 55.06(11)(c). *N.N.* cites to *State ex rel. Lockman v. Gerhardstein,* 107 Wis. 2d 325, 320 N.W.2d 27 (Ct. App. 1982), as precedent for the proposition that time limits in Wis. Stat. ch. 51 are mandatory and supports the same conclusion for ch. 55 time limits.

held within 120 days of the filing of the petition. R.R.E. petitioned for release from commitment under § 971.17 because the State failed to comply with the thirty-day time requirement. *R.R.E.*, 162 Wis. 2d at 703. Our supreme court held that the thirty-day time limit of § 51.20(16)(c) was directory in response to a § 971.17 reexamination petition, that R.R.E. was not entitled to release from the § 971.17 commitment and that the remedy was a remand to the circuit court "for a hearing to determine whether R.R.E. is entitled to release under the standards of sec. 971.17." *R.R.E.*, 162 Wis. 2d at 715.

¶ 8. *Lockman* addressed a WIS. STAT. ch. 51 patient while *R.R.E.* focused on a WIS. STAT. § 971.17 patient. We conclude that because of the unique nature of a WIS. STAT. ch. 980 commitment, neither *Lockman* nor *R.R.E.* is directly applicable.

¶ 9. WISCONSIN STAT. ch. 980 creates a civil commitment procedure primarily intended to protect the public and to provide concentrated treatment to convicted sexually violent persons, not to punish the sexual offender. *State v. Carpenter*, 197 Wis. 2d 252, 258, 541 N.W.2d 105 (1995). The principal purposes of ch. 980, the protection of the public and the treatment of convicted sex offenders who are at a high risk to reoffend in order to reduce the likelihood that they will engage in such future conduct, are significantly nonpunitive and remedial. *Carpenter*, 197 Wis. 2d at 271. Because of these dual purposes, ch. 980 commitments differ from both WIS. STAT. ch. 51 and WIS. STAT. § 971.17 commitments. *State v. Williams*, 2001 WI App 263, ¶¶ 12–20, 249 Wis. 2d 1, 637 N.W.2d 791.

¶ 10. WISCONSIN STAT. ch. 51 commitments are permitted for many reasons that do not implicate a

danger to others. *Williams*, 2001 WI App 263 at ¶ 13; Wis. Stat. § 51.20(1)(a)2.a, c-e. In contrast to ch. 51, significant danger to others is the *only* justification for a commitment under Wis. Stat. ch. 980. *Williams*, 2001 WI App 263 at ¶ 13. Thus, persons committed under ch. 980 are more dangerous as a class than those committed under ch. 51. *Williams*, 2001 WI App 263 at ¶ 13 (citing *State v. Post*, 197 Wis. 2d 279, 322, 541 N.W.2d 115 (1995)).

¶ 11. In addition, it is much more difficult to commit a person under Wis. Stat. ch. 980 than it is to commit someone under Wis. Stat. ch. 51. *Williams*, 2001 WI App 263 at ¶ 14. First, ch. 980 provides a right to a trial by a jury of twelve, all of whom must agree that the subject of the petition is a sexually violent person. Wis. Stat. §§ 980.03(3), 980.05(2); *Williams*, 2001 WI App 263 at ¶ 14. On the other hand, a ch. 51 commitment is by a jury of six, only five of whom must agree to commit. Wis. Stat. § 51.20(11)(a), (b); *Williams*, 2001 WI App 263 at ¶ 14. Second, the burden of proof is "clear and convincing evidence" in ch. 51 commitments, § 51.20(13)(e), but "beyond a reasonable doubt" in ch. 980 commitments, § 980.05(3). *Williams*, 2001 WI App 263 at ¶ 14.

¶ 12. Furthermore, a person may be committed under Wis. Stat. ch. 51 because he or she is a danger to others even though the factual predicates to the commitment may represent the first time he or she has done something that "[e]vidences a substantial probability of physical harm to other individuals." Wis. Stat. § 51.20(1)(a)2.b; *Williams*, 2001 WI App 263 at ¶ 15. Conversely, a person committed under Wis. Stat. ch. 980 has, by definition, not only *already* violated the rights of at least one victim by an act or acts of sexual violence, but, significantly, has also demonstrated that

"previous treatment has proved ineffective." *Williams*, 2001 WI App 263 at ¶ 15 (citing *Post*, 197 Wis. 2d at 309).

¶ 13. Although WIS. STAT. ch. 51 is perhaps more lenient with those who are subject to its provisions than is WIS. STAT. ch. 980, there are significant differences between the degree of danger posed by each of the two classes of persons, as well as significant differences in what must be proven in order to commit under the two chapters. *Williams*, 2001 WI App 263 at ¶ 16.

¶ 14. Neither is a WIS. STAT. ch. 980 commitment analogous to a WIS. STAT. § 971.17 commitment. In a § 971.17 commitment, the law only infers current mental illness and dangerousness when a person is found to have violated the criminal law but to be not responsible for that violation because he or she had a mental disease or defect at the time of the crime. WIS. STAT. § 971.15(1); *Williams*, 2001 WI App 263 at ¶ 17. In contrast to this inference of current mental state and dangerousness, a person may not be committed under ch. 980 unless the State proves beyond a reasonable doubt both that the person actually has a mental disorder at the time of the commitment trial and is then actually dangerous to others because the mental disorder creates a substantial probability that the person will engage in acts of sexual violence. WIS. STAT. §§ 980.02(2)(b), (c) and 980.05(3)(a); *Williams*, 2001 WI App 263 at ¶ 18. This is a critical distinction between persons committed under § 971.17 and persons committed under ch. 980. *Williams*, 2001 WI App 263 at ¶ 18.

¶ 15. Additionally, a WIS. STAT. ch. 980 committed person has alternative routes and protections not available to a WIS. STAT. § 971.17 committed person, not the least of which is the ability to petition for discharge at any time with the approval of the secretary of DHFS.

*Williams*, 2001 WI App 263 at ¶ 19. Also under ch. 980, the trial court can consider supervised release in connection with any petition for discharge. *Williams*, 2001 WI App 263 at ¶ 19.

¶ 16. The differences in the procedures for initial commitment between WIS. STAT. ch. 980 and WIS. STAT. § 971.17 are based upon real distinctions between the statutory schemes and the interests served by each. We are not convinced that the purpose of ch. 980 is best served by applying the case law governing either WIS. STAT. ch. 51 or § 971.17 commitments.

¶ 17. We must now consider whether the initial reexamination of WIS. STAT. § 980.07(1) is mandatory or directory. In determining whether a statutory provision is mandatory or directory, "as of every other question of statutory construction, the prime object is to ascertain the legislative intention." *Worachek v. Stephenson Town Sch. Dist.*, 270 Wis. 116, 120, 70 N.W.2d 657 (1955) (citation omitted). Although use of the word "shall" in a statute suggests that the provision is mandatory, this court has held that statutory time limits can be directory despite the use of the word "shall." *Eby v. Kozarek*, 153 Wis. 2d 75, 79–80, 450 N.W.2d 249 (1990). Consequently, the determination of whether "shall" is mandatory or directory is not governed by a *per se* rule. *State ex rel. Jones v. Franklin*, 151 Wis. 2d 419, 428, 444 N.W.2d 738 (Ct. App. 1989) (Sundby, J., dissenting).

¶ 18. In determining whether a statutory time limit is mandatory or directory, we consider several factors: the existence of penalties for failure to comply with the limitation, the statute's nature, the legislative objective for the statute and the potential consequences to the parties, such as injuries or wrongs. *State v.*

701

*Thomas*, 2000 WI App 162, ¶ 9, 238 Wis. 2d 216, 617 N.W.2d 230, *review denied*, 2000 WI 121, 239 Wis. 2d 312, 619 N.W.2d 94 (Wis. Sept. 12, 2000) (No. 00–0150).

■

¶ 19. Here, WIS. STAT. § 980.07(1) does not provide a penalty for a violation of the six-month time period. A statute prescribing the time in which public officers are required to perform an official act, unless it denies the exercise of power after such time, is generally directory. *Karow v. Milwaukee County Civil Serv. Comm'n*, 82 Wis. 2d 565, 571, 263 N.W.2d 214 (1978). However, the omission of a prohibition or a penalty is not dispositive but only one factor to be considered in the analysis of whether the legislature intended the provision to be mandatory or directory. *Id*. at 572.

¶ 20. The nature of a WIS. STAT. ch. 980 commitment is civil, not criminal. *Thomas*, 2000 WI App 162 at ¶ 11. The chief objectives of ch. 980 are the protection of the community from the dangerously mentally disordered and to provide care and treatment to those with mental disorders that predispose them to sexual violence. *Post*, 197 Wis. 2d at 302. It is important, however, to highlight that the legislature's primary focus in creating ch. 980 was to provide treatment to convicted sexually violent persons for their mental conditions. *Thomas*, 2000 WI App 162 at ¶ 11. Failure to provide a reexamination within the statutorily required time period, without penalty, can hardly be said to assist in accomplishing this primary focus.

¶ 21. The potential consequences for both parties cannot be labeled insignificant; failure to conduct a reexamination could result in the release of a potentially dangerous mentally disordered person into the community or the continued confinement of a person who no longer presents a danger to society and the

prolonged deprivation of his or her liberty. Where the failure to act within a statutory time limit does work an injury or wrong, this court has construed the time limit as mandatory. *Karow*, 82 Wis. 2d at 572. Certainly an individual such as Marberry, who is institutionalized and deprived of his liberty, is injured to a substantial degree.

¶ 22. The general rule in interpreting statutory language is that "the word 'shall' is presumed mandatory when it appears in a statute." *State v. Sprosty*, 227 Wis. 2d 316, 324, 595 N.W.2d 692 (1999) (citation omitted). "Further support is given to a mandatory interpretation of 'shall' when the legislature uses the words 'shall' and 'may' in a particular statutory section, indicating the legislature was aware of the distinct meanings of the words." *Id.* (citation omitted).

¶ 23. The legislature used both the words "shall" and "may" in WIS. STAT. § 980.07:

> **(1)** If a person has been committed under s. 980.06 and has not been discharged under s. 980.09, the department *shall* conduct an examination of his or her mental condition within 6 months after an initial commitment under s. 980.06 and again thereafter at least once each 12 months for the purpose of determining whether the person has made sufficient progress to be entitled to transfer to a less restrictive facility, to supervised release or to discharge. At the time of a reexamination under this section, the person who has been committed *may* retain or, if he or she is indigent and so requests, the court *may* appoint a qualified expert or a professional person to examine him or her.
>
> **(2)** Any examiner conducting an examination under this section *shall* prepare a written report of the

examination no later than 30 days after the date of the examination. The examiner *shall* place a copy of the report in the person's medical records and *shall* provide a copy of the report to the court that committed the person under s. 980.06.

(3) Notwithstanding sub. (1), the court that committed a person under s. 980.06 *may* order a reexamination of the person at any time during the period in which the person is subject to the commitment order. (Emphasis added.)

Therefore, we "can infer that the legislature was aware of the different denotations and intended the words to have their precise meanings." *Sprosty*, 227 Wis. 2d at 325 (citation omitted).

¶ 24. By and large, if a provision of a statute states a time for performance of an official duty, without any language denying performance after a specified time, it is directory; however, if the time period is provided to safeguard someone's rights, it is mandatory and the agency cannot perform its official duty after the time requirement has passed. 3 SUTHERLAND STATUTORY CONSTRUCTION § 57.19 (6th ed. 2001).

¶ 25. Where statutes provide for performance of acts by public officers protecting private rights or in the public interest, they are mandatory. *Id.* at § 57.14; *Town of LaGrange v. Auchinleck*, 216 Wis. 2d 84, 97, 573 N.W.2d 232 (Ct. App. 1997). This rule has been enunciated by the United States Supreme Court as follows: "The conclusion to be deduced from the authorities is, that where power is given to public officers . . .—whenever . . . individual rights call for its exercise—the language used . . . is in fact peremptory."

704

*Id.* at 97–98 (citing *Bd. of Supervisors v. United States ex rel. State Bank*, 71 U.S. 435, 446–47 (1867)).

> There are, undoubtedly, many statutory requisitions intended for the guide of officers in the conduct of business devolved upon them, which do not limit their power or render its exercise in disregard of the requisitions ineffectual. Such, generally, are regulations designed to secure order, system and dispatch in proceedings, and by a disregard of which the rights of parties interested cannot be injuriously affected . . . . But when the requisitions prescribed are intended for the protection of the citizen, and to prevent a sacrifice of his property, and by a disregard of which his rights might be and generally would be injuriously affected, they are not directory but mandatory.

*French v. Edwards*, 80 U.S. 506, 511 (1871). "If the provision is essential, it is mandatory." *Midwest Mut. Ins. Co. v. Nicolazzi*, 138 Wis. 2d 192, 198, 405 N.W.2d 732 (Ct. App. 1987) (citation omitted).

¶ 26. In the case at hand, mental reexaminations are conducted "for the purpose of determining whether the person has made sufficient progress to be entitled to . . . supervised release or to discharge." *Post*, 197 Wis. 2d at 300 (citing WIS. STAT. § 980.07(1)). The State maintains the burden of proof throughout all WIS. STAT. ch. 980 proceedings and must continually prove the need for detention; a ch. 980 committed person cannot be deprived of his or her liberty unless the State proves by clear and convincing evidence that the person is still dangerous to others because the person's mental disorder creates a substantial probability that he or she will engage in acts of sexual violence. WIS. STAT. §§ 980.08(4), 980.09(2)(b). The reexamination is a safeguard against arbitrary confinement and we have previously said that this reexamination is mandatory. *State*

705

*v. Ransdell*, 2001 WI App 202, ¶ 9, 247 Wis. 2d 613, 634 N.W.2d 871. A § 980.07 reexamination is a necessary precondition for securing judicial review of the commitment under § 980.09(2) and triggers other important procedural guarantees, such as the right to an independent mental examination, § 980.07(1), and the right to counsel, § 980.09(2)(a).

¶ 27. A WIS. STAT. ch. 980 committed person's liberty hinges upon this initial reexamination. Because of the significance of this initial reexamination and because such a reexamination is fundamental to securing other essential rights granted by ch. 980, we must conclude that the six-month time period for an initial reexamination is mandatory.

¶ 28. There is no doubt that Marberry was not provided his initial reexamination within this mandatory six-month period. In fact, it took DHFS nearly two years to provide him with this reexamination. The question remaining for us, then, is what is the appropriate remedy when DHFS fails to provide a WIS. STAT. ch. 980 committed person with an initial reexamination within the required six months?

¶ 29. Marberry argues that the "prolonged indifference" of DHFS necessitates his release from his WIS. STAT. ch. 980 commitment. The State argues that release is inappropriate because there are insufficient facts developed in the record to explain DHFS's inaction. Under the egregious circumstances presented in this case, release is the only appropriate remedy.

¶ 30. All of the remedies offered by the State are inadequate to address the wrong perpetrated here. As noted by Marberry, as a practical matter, it is unlikely

that Wis. Stat. ch. 980 committed persons would be aware of or have the ability to pursue these other remedies. Pursuit of alternative remedies would require substantial time during which the committed person would continue to be deprived of his or her liberty. The State acknowledges that some of the proposed remedies are unworkable. For example, neither remedial nor punitive contempt is available to Marberry in this situation.

¶ 31. We disagree with the State's assertion that damages and attorney's fees under Wis. Stat. ch. 51 are an appropriate remedy, as they do not address the problem of being denied a timely reexamination and are insufficient to compensate a person deprived of his or her liberty. Monetary damages are unlikely to benefit a Wis. Stat. ch. 980 patient because the patient is billed for his or her confinement and treatment and DHFS could seize any money damages received to satisfy this debt. Wis. Stat. § 46.10(2).

¶ 32. Freedom from physical restraint is a fundamental right that "has always been at the core of the liberty protected . . . from arbitrary governmental action." *Post*, 197 Wis. 2d at 302 (citation omitted). Our supreme court held that "[c]ivil commitment for any purpose constitutes a significant deprivation of liberty . . . ." *Id.* (citation omitted). The *Post* court recognized that a proper function of the legal process is to minimize the risk of erroneous decisions and cautioned that an "individual should not be asked to share equally with society the risk of error when the possible injury to the individual is significantly greater than any possible harm to the state." *Id.* at 326 (citation omitted). "Loss of liberty through involuntary commitment imposes just such a heavy duty upon the state." *Id.*

¶ 33. DHFS asserts that the Wisconsin Resource Center (WRC), where Marberry was confined, did not receive a copy of the commitment order until seven months after the initial commitment. In addition, DHFS indicates that WRC staff did not recognize, upon receipt of the order, that said order triggered the statutory obligation to conduct a periodic reexamination. Marberry suggests that DHFS's failure to timely conduct the reexamination was due, in part, to a shortage of staff.

¶ 34. However, when our supreme court held WIS. STAT. ch. 980 to be constitutional, the State promised it was prepared to provide specific treatment to those committed under ch. 980 and to not simply warehouse those committed. *Carpenter*, 197 Wis. 2d at 267. The State assured our supreme court that as the population increased, plans existed to increase the staff proportionately and that a committed person would be discharged as soon as his or her dangerousness or mental disorder abated. *Id.* at 267–68. As noted in *Post*, we presume good faith on the part of the legislature; the State is clearly obliged under WIS. STAT. § 980.06(1) to provide control, care and treatment to those determined to be sexually violent persons. *Post*, 197 Wis. 2d at 308–09. Treatment is a bona fide goal of ch. 980 and, presumably, the legislature would proceed in good faith and fund the treatment programs necessary for those committed under ch. 980. *Post*, 197 Wis. 2d at 308.

¶ 35. WISCONSIN STAT. ch. 980 does contain restrictive procedural time limits and we acknowledge that these time limits may cause administrative difficulties. *See State v. Brown*, 215 Wis. 2d 716, 726, 573 N.W.2d 884 (Ct. App. 1997). However, in *Carpenter* and *Post*, our supreme court accepted the State's affirmation that it was "prepared to provide specific treatment to those

committed under ch. 980 and not simply warehouse them" and that the legislature would "proceed in good faith and fund the treatment programs necessary for those committed under chapter 980." *Sprosty*, 227 Wis. 2d at 331 (citing *Carpenter*, 197 Wis. 2d at 267, and *Post*, 197 Wis. 2d at 308, respectively). The employment of qualified and knowledgeable personnel and the creation of facilities and services to provide periodic reexaminations are not contrary to these stated purposes. *Id.*

¶ 36. Wisconsin's sexual predator law survived constitutional challenge, in part, because the nature and duration of Wis. Stat. ch. 980 commitments are to be reasonably related to the purposes for those commitments. *Sprosty*, 227 Wis. 2d at 330. The control, care and treatment of the committed person is to be in "the least restrictive manner consistent with the requirements of the person and in accordance with the court's commitment order." *Id.* (quoting Wis. Stat. § 980.06(1), (2)(b)).

¶ 37. Here, DHFS took nearly two years to provide Marberry with a reexamination that should have been conducted within six months. Under the extreme state of affairs presented here and the prolonged deprivation of Marberry's liberty in violation of the strict safeguards of Wis. Stat. ch. 980, Marberry's release is the only appropriate remedy.

### CONCLUSION

¶ 38. We conclude that the six-month time limit of Wis. Stat. § 980.07(1) for an initial reexamination is mandatory and because of the egregious circumstances of this case, Marberry's release is necessary. We therefore reverse the order of the circuit court.

*By the Court.*—Order reversed.

¶ 39. BROWN, J. *(concurring in part; dissenting in part).* I agree with the majority's careful distinction between Wis. Stat. ch. 980, Wis. Stat. ch. 51 and Wis. Stat. § 971.17. The discussion is excellent and, in my view, the conclusions reached are unassailable. I also join in the majority's conclusion that the six-month time period for a reexamination is mandatory. I disagree, however, that the only remedy available for failure to meet the statutory time frame is release of the committed person to the streets. Release of a ch. 980 patient whose dangerousness or mental disorder has not abated serves neither to protect the public nor provide care and treatment for the patient. Therefore, I dissent on this issue and write separately to detail what I believe are the appropriate remedies when government officials fail to satisfy the six-month time period for reexamination.

¶ 40. The majority pins its remedy to its interpretation of *State v. Post*, 197 Wis. 2d 279, 541 N.W.2d 115 (1995), and *State v. Carpenter*, 197 Wis. 2d 252, 541 N.W.2d 105 (1995). The majority interprets these cases as recognizing a liberty right to a reexamination. *See* Majority at ¶ 26 ("[t]he reexamination is a safeguard against arbitrary confinement") *and* Majority at ¶ 27 ("[a] Wis. Stat. ch. 980 committed person's liberty hinges upon this initial reexamination"). According to this reasoning, if a committed person is not timely reexamined, his or her liberty interests mandate release as the only appropriate remedy.

¶ 41. I do not agree that *Post* and *Carpenter* view periodic reexaminations as procedural due process safeguards. In *Carpenter*, the defendant argued that the primary purpose of Wis. Stat. ch. 980 is punishment. *Carpenter*, 197 Wis. 2d at 268. The supreme court rejected this contention, holding that the purposes of

the statute are to protect the public and provide treatment to convicted sex offenders who are at high risk to reoffend. *Id.* at 271. In *Post*, the court made the following comments about periodic testing:

> Periodic mental examinations are conducted "for the purpose of determining whether the person has made sufficient progress to be entitled to transfer to a less restrictive facility, to supervised release or to discharge." WIS. STAT. § 980.07(1). Thus, the duration of an individual's commitment is intimately linked to treatment of his mental condition. Commitment ends when the committed person no longer suffers from a mental disorder or when that condition no longer predisposes him to commit acts of sexual violence. Protection of the community is also well-served by this statutory scheme because the danger to the public has necessarily dissipated when treatment has progressed sufficiently to warrant an individual's release.

*Post*, 197 Wis. 2d at 314. In other words, the periodic testing is evidence of the legislative purpose to control, care and treat committed persons with the goal of returning them to society with minimal risk to the public, rather than warehousing such persons indefinitely.

¶ 42. Failure to hold the reexamination within six months does not transmogrify the statute into a penal one. Nor does it result in curtailment of a patient's liberty interests beyond that which is already encompassed by the patient's initial commitment. *See id.* at 317 (WIS. STAT. ch. 980 balances individual liberties with the public's right to protection). The failure to accomplish the reexamination within six months, therefore, is not a due process failure, but a failure to monitor the patient's treatment and progress. Under this view, release is not only inappropriate, it is not justifiable

under the dual purposes of the statute: protection of the public from sexually violent persons likely to reoffend and care and treatment of the patient.

¶ 43. This is not to say that there should not be consequences that flow from the governmental misconduct in this case. But I simply do not believe that it is fair or just to visit the consequences upon the innocent public. In addition, Marberry is not truly served by release either, given that his mental illness has not yet abated to a point where he may be safely reintroduced to the community. According to the most recent reexamination of Marberry, his health status requires that he receive treatment, not release. *See State v. Seibert*, 220 Wis. 2d 308, 320, 582 N.W.2d 745 (Ct. App. 1998) (refusing to allow release for committee's claim that facility failed to develop appropriate treatment program, stating that release would be "absurd" and his remedy was to litigate the issue and if successful, obtain correct treatment).

¶ 44. I prefer to take an economic approach to identify the consequences of the government's misconduct and to impose a remedy. An economic analysis is guided by cost efficiency; it identifies the costs of a transaction and then applies sanctions to arrive at the most economically efficient outcome. *See generally* Richard A. Posner, *An Economic Theory of the Criminal Law,* 85 Colum. L. Rev. 1193 (1985). According to Posner, concerns about economic efficiency have guided courts in devising remedies for governmental misconduct in criminal cases, even though such concerns may not always be articulated. Richard A. Posner, *Excessive Sanctions for Governmental Misconduct in Criminal Cases,* 57 Wash. L. Rev. 635, 646 (1982). He maintains, for example, that the harmless error rule is a remedy that can be explained in terms of efficiency:

If a person is guilty beyond a reasonable doubt on the basis of evidence both reliable and just, then a retrial will impose either a deadweight loss in the form of litigation expenses that will not change the outcome of the first trial, or an equally or (probably) more serious social cost resulting from the acquittal of a guilty person and consequent reduction in the deterrent and incapacitative effects of criminal punishment. These costs are excessive relative to the governmental misconduct, which by definition is slight since the defendant would in all probability have been convicted anyway.

What the harmless-error rule does, then, is to identify a type of governmental misconduct whose social costs are much lower than the social costs of attempting to deter the misconduct by overturning the conviction and forcing a retrial.

*Id.* at 645.[1]

---

[1] Our supreme court echoed these sentiments in *State v. Ruiz*, 118 Wis. 2d 177, 201–02, 347 N.W.2d 352 (1984), when it considered whether to overturn a conviction as a disciplinary measure directed at the district attorney who had displayed a continuing pattern of nondisclosure of exculpatory evidence. The court carefully evaluated the many interests at stake, including the defendant's interest in a fair trial, the public's interest in having the guilty punished, the public's interest in preserving precious judicial resources and the interests of the witnesses and family of the victim. *Id.* at 202. Ultimately, the court ruled against reversal, determining that exclusion of the evidence in controversy would not have affected the result and "[r]etrying this defendant would be expensive and further congest an already crowded court system. Furthermore, there are obvious practical difficulties in trying the defendant for a murder that occurred nearly four years ago. Finally . . . retrial of this case would be traumatic for those innocently affected by this heinous crime." *Id.* at 202–03. Notably, the court stated it was not condoning the district attorney's conduct, but that the

¶ 45. Posner's cost efficiency approach resonates in this case as well. What are the costs if Marberry is granted his request for release? Marberry has previously been convicted of sexually assaulting an adult female by use of force and an adolescent female, also by use of force. He has been examined by WRC personnel and found to be a dangerous sexual predator. He has been reexamined and his illness has not subsided. Release of such a person, whom experts predict will reoffend, is a costly remedy triggering expenditures of police and community resources in the form of heightened security and other safety precautions in the community in which he plans to live. We cannot ignore these very real costs. Significantly, these costs will accrue if we grant Marberry's request for release regardless of whether he actually reoffends or not.

¶ 46. These costs must be compared to the cost of governmental misconduct involved in this case. Officials failed to hold a reexamination that was necessary to monitor Marberry's treatment and progress. From an economic perspective, the cost of this failure is only noticeable when patients who are eligible for release continue to reside at WRC, a drain on the state's resources. It is obviously more cost efficient to discharge persons no longer in need of treatment than to keep them in the system. There is also the cost associated with preventing a person from being a contributing and fully-functioning member of society when that person's mental health no longer requires confinement. In this case, however, Marberry is not a person who would have been eligible for release had the reexamination been timely conducted. Therefore, there is no

balancing of interests weighed against reversal. *Id.* at 203. Clearly, the court did not want to impose significant social costs on the public as a means to induce the district attorney to comply with the law.

societal cost associated with his absence from the community and the state did not unnecessarily expend resources on Marberry's treatment and care. Conse-quently, the costs associated with the DHFS's failure to timely hold the reexamination are negligible.

¶ 47. My conclusion, therefore, is that release is not the appropriate remedy because it inefficiently allocates costs. The social costs associated with the misconduct are much lower than the social costs of attempting to deter the misconduct by releasing a potentially sexually violent person onto the streets.[2] Instead, I would impose the sanctions set forth below. These sanctions would constitute detriments imposed directly on the responsible government officials in order to induce conformity with the requirements of WIS. STAT. ch. 980.

¶ 48. The first appropriate remedy is the issuance of a writ of mandamus to compel the public officials to perform a duty required by law. *See Pasko v. City of Milwaukee*, 2002 WI 33, ¶ 24, 252 Wis. 2d 1, 643 N.W.2d 72. In order for a writ of mandamus to be issued, there must be a clear legal right, a positive and plain duty, substantial damages, and no other adequate remedy at law. *Id.*

---

[2] Another way to state this principle is that "remedies should be tailored to the injury suffered" so as not to "unnecessarily infringe on competing interests." *See United States v. Morrison*, 449 U.S. 361, 364 (1981). In *Morrison*, federal agents contacted the defendant without her counsel's presence even though they knew she had an attorney. *Id.* at 362. She moved for dismissal of the indictment based on a violation of her Sixth Amendment right to counsel. Because she made no showing of prejudice, the Court concluded that the "drastic relief" of dismissal was unwarranted, but suggested that a remedy might be available in other proceedings. *Id.* at 366–67.

¶ 49. Under WIS. STAT. ch. 980, a committed person has a clear right to the six-month reexamination of his or her mental condition and it is the State's obligation to timely initiate that process. The State doubts, however, that most ch. 980 patients would suffer substantial damages or injuries should they not be afforded a periodic reexamination of their mental commitment within the legislatively prescribed time periods because history shows that it is unlikely that the reexamination will result in supervised release or discharge. In other words, the State argues that patients will rarely be able to show substantial damage for WRC's failure to follow the law.

¶ 50. The State misses the point altogether by assuming that substantial damages are incurred only when a patient achieves mental health and his or her supervised release or discharge is delayed by official inaction. In essence, the State falls into the "liberty interest" argument put forth by Marberry and which I have rejected in its entirety. WISCONSIN STAT. ch. 980 patients have the right to treatment for their mental disorders. Part and parcel of the right to treatment is periodic monitoring of the progress of treatment. Adherence to the reexamination schedule serves to both facilitate the patient's treatment and provide the impetus to the patient to achieve mental wellness. This is true whether or not the patient has actually made sufficient progress to justify supervised release or discharge.[3] Simply stated, all patients have a substantial

---

[3] In addition, periodic monitoring also enables WRC to determine whether the patient has progressed sufficiently so that the state no longer has to expend resources on his or her care and treatment.

interest in the correct implementation of ch. 980 procedures because it facilitates their statutory right to treatment.

¶ 51. It follows that when the patient's progress is not adequately monitored, he or she sustains substantial damage to the right to treatment, and has the right to insist that the legislature's goal of reexamination be correctly implemented. Therefore, in cases where the State fails to meet the statutorily prescribed time periods, a writ of mandamus should be issued to direct the responsible officials to undertake all necessary action to ensure that the mental reexamination is initiated and promptly completed. *See Jackson v. State of Florida*, 802 So. 2d 1213, 1218 (Fla. Dist. Ct. App. 2002) (issuing writ of mandamus as remedy, rather than release, when state failed to conduct mandatory annual reexamination under Florida's sexually violent predators law).[4]

---

[4] Marberry complains that mandamus is an impractical remedy because the committee usually has no attorney representing him or her at the time the periodic testing is supposed to take place. He submits that requiring a committee to bring a writ of mandamus before the circuit court asks too much of those untrained in the law. I am not convinced. An ad hoc review of the court's statistics in 2001 revealed the following: There were 364 criminal pro se appeals. This represented eleven percent of all appeals and twenty-three percent of the criminal appeals. In addition, six pro se appeals came from Wis. STAT. ch. 980 committees. I conclude that many of the people detained in our institutions are knowledgeable about the legal procedures pertaining to them. When they feel aggrieved, they have no qualms about prosecuting their claims without an attorney. I have no doubt that, if it were the law in this state that failure to hold a reexamination in the prescribed time is remedied by filing a writ of mandamus, ch. 980 committees would act pursuant to that law, with or without an attorney.

¶ 52. Where a writ or court order has been issued and the mental reexamination still has not been performed, as is the case in this instance, the public officials may be held in contempt for their failure to comply with the order. *See, e.g., Schroeder, Gedlen, Riester & Moerke v. Schoessow*, 108 Wis. 2d 49, 50, 321 N.W.2d 131 (1982) (reviewing contempt proceedings resulting from aldermen's failure to comply with a peremptory writ of mandamus). The State argues that contempt would be a cumbersome remedy due to the difficulty in identifying the parties responsible for the failure to conduct a prompt periodic exam. I am not convinced that this is a significant hurdle at all. Indeed, this remedy would be an effective tool precisely because it focuses on the particular persons who have the authority to ensure that procedures are established to carry out the requirements of the statute.

¶ 53. Therefore, I would approach the issue in the following manner. Upon request, the trial court may order the State to disclose all information that will identify the person or persons responsible for not providing the reexamination. Upon disclosure, the court may order these persons held in contempt and fine them or jail them. I am not persuaded by the State's position that there is no evidence of willful misconduct at WRC and that officials there are doing the best they can with limited resources. Whether officials have been acting in good faith or in an egregious manner are facts that would be adduced, to the benefit of the public and the legislature, during contempt proceedings.

¶ 54. If any individual's actions are shown to be in flagrant disregard of the court's order, a jail term would be more than appropriate. Jail is a real cost to an egregious offender of the mandamus. A fine is a very real economic cost. If the purpose is to provide a

sanction that will force state officials to follow the law, contempt is the better sanction than release of the offender. Release is an excessive sanction because the costs are way too high. Contempt is workable and gets the message out to the people who are really and finally responsible for violating the legislature's mandatory time periods for reexamination. The cost is visited upon these flagrant violators and not the public. If someone at WRC knew he or she could go to jail for ignoring a mandamus, he or she would take extra care to make sure the individual received his or her reexamination.

¶ 55. Finally, if the mental reexamination ultimately discloses that the committed person had made sufficient progress to justify supervised release or discharge, a damages remedy may be available in an action under 42 U.S.C. § 1983 (2002). The State does not believe that § 1983 is available to Marberry because he has not suffered the violation of any federal constitutional right as a result of its noncompliance with WIS. STAT. ch. 980. Section 1983 does not cover conduct that violates only state laws. *See Baker v. McCollan*, 443 U.S. 137, 140 (1979) (stating that the first inquiry in a § 1983 suit is whether the plaintiff has been deprived of a right secured by the Constitution). I agree with this assessment of the law vis-a-vis Marberry. However, it is not applicable to a person who achieves mental health but who nonetheless languishes at WRC because of the State's failure to hold the reexamination in a timely fashion. That person would have a cause of action under § 1983 because the length of his or her commitment would not bear a reasonable relationship to the underlying purpose of the commitment. *See Seling v. Young*, 531 U.S. 250, 265 (2001).

¶ 56. The above described sanctions are the most efficient mechanisms for inducing public officials to implement the statute as written. They allocate the costs of governmental misconduct in the most efficient manner, ensuring that the consequences of official inaction are borne by the officials rather than upon the innocent citizens of our state.