958 So.2d 396 (2007)
James Marion MOORMAN, as attorney for and next friend of L.A., a child, and James Calvin Ingram, Petitioners,
v.
Janie HATFIELD, Manager, Tenth Judicial Circuit Electronic Court Recording Office; Janice Conway, Manager, Twelfth Judicial Circuit Digital Court Recording Office; and Office of the Attorney General, Respondents.
No. 2D06-536.
District Court of Appeal of Florida, Second District.
March 7, 2007.
James Marion Moorman, Public Defender, and Robert A. Young, Assistant Public Defender, Bartow, for Petitioners.
Susan W. Fox of Fox & Loquasto, P.A., Tampa; and Wendy S. Loquasto of Fox & Loquasto, P.A., Tallahassee, for Respondents Hatfield and Conway.
*397 Bill McCollum, Attorney General, Tallahassee, and Richard M. Fishkin, Assistant Attorney General, Tampa, for Respondent Office of the Attorney General.
PER CURIAM.
James Marion Moorman, as attorney for and next friend of L.A., a child, and James Calvin Ingram (petitioners), filed a petition for writ of mandamus in this court seeking relief to address certain electronic court recording and transcription issues in the Tenth and Twelfth Judicial Circuits. As respondents, they named Janie Hatfield in her official capacity as manager of the Tenth Judicial Circuit Electronic Court Recording Office and Janice Conway in her similar official capacity for the Twelfth Judicial Circuit. In addition, the Office of the Attorney General was permitted to respond to the petition. The problems discussed in this petition arise from two significant changes in trial court case management: (1) the shift away from using trained professional court reporters in all courtroom proceedings to the use of less costly digital recording and transcription and (2) the shift in the funding of indigent cases from local government to the state under revision 7 to article V of the Florida Constitution, see Art. V, § 14, Fla. Const. Although these matters undoubtedly warrant attention and clarification, after considerable reflection we conclude that this court cannot resolve the problems discussed in the petition through the issuance of an extraordinary writ to any of the respondents. Accordingly, we deny the petition.

I. THE ISSUES RELATING TO JAMES CALVIN INGRAM
When this petition was filed, Ingram had a pending criminal appeal in this court in which he was represented by the public defender. That appeal challenged an order from the Tenth Judicial Circuit holding Ingram in contempt for failure to honor a witness subpoena. The record included a transcript, but it contained significant errors. Among other errors, the transcript purported to include an appearance by an attorney on behalf of Ingram when no such attorney existed. The transcript was not based on the work of a court reporter, but on an electronic audio recording that had been transcribed by a "Tenth Judicial Circuit electronic court reporter" who certified that she was "authorized to transcribe the foregoing proceeding."[1] It appears that the transcriptionist was confused and believed that Ingram was represented by counsel because there were two assistant state attorneys in attendance at the hearing.
This court reviewed the record in Ingram's pending appeal. Even though the transcript was problematic, the remaining portions of the record revealed serious due process issues surrounding Ingram's conviction for contempt. The parties obtained a corrected transcript that acknowledged that Ingram was not represented by counsel during the criminal contempt hearing. This record was sufficient to require the reversal of Ingram's conviction; indeed the State conceded that reversal was required. Accordingly, this court has already issued an opinion reversing the order on appeal. See Ingram v. State, 933 So.2d 734 (Fla. 2d DCA 2006).
Nevertheless, the petitioners argue that we should not dismiss or deny this portion of the petition as moot. They claim that errors in transcripts under the new methods of electronic or digital recording are so pervasive that we should use our powers of *398 mandamus to compel better transcripts. The Office of the Attorney General agrees that digital recording has resulted in a substantial decline in the quality of transcription.
Mandamus is generally available only when a petitioner has no other adequate, specific remedy. See City of Coral Gables v. State ex rel. Worley, 44 So.2d 298 (Fla.1950). In Ingram's case, because a corrected transcript was obtained and his adjudication reversed, we decline to issue a writ of mandamus.

II. THE ISSUES RELATING TO L.A.
The issues presented by L.A. are more complex. L.A. is an indigent minor child who was adjudicated delinquent in the Twelfth Judicial Circuit. L.A. filed an appeal of the adjudication and disposition on August 8, 2005. That appeal is currently pending in this court as case number 2D05-3966. Supplemental designations to the court reporter were filed in December 2005, requesting transcription of both the adjudicatory hearing and the disposition hearing. Nevertheless, no transcript has been filed, and no motion to compel has been filed in that proceeding to date. Accordingly, the appellate proceeding is not perfected, no briefs have been filed, and this court is currently unable to review the appeal.
The petition for mandamus and the appendix provided with it explain that this delinquency proceeding was not recorded by a court reporter; it was electronically recorded. When the public defender filed the standard request for a transcript from a court reporter, the Twelfth Judicial Circuit Digital Recording Office provided a compact disk (CD) to the public defender containing a digital audio recording from microphones inside the courtroom where L.A. was tried but did not provide a typed transcript. Ms. Conway, in a letter to an assistant public defender in James Marion Moorman's office, describes this CD as a "CD transcript." Pursuant to a local administrative order,[2] Ms. Conway takes the position that the public defender is responsible for "retain[ing] a transcriptionist who should promptly file the transcript with the Clerk of Court. The transcriptionist invoice should be submitted by the Twelfth Circuit PD to the Justice Administrative Commission for payment." The public defender has declined to follow Ms. Conway's suggestions and has filed this petition instead, asking this court, among other things, to compel Ms. Conway "to provide the transcription that she has been funded to provide." Thus, the parties to this proceeding disagree on whose duty it is to both provide and pay for the transcript that is necessary to perfect the underlying appeal.
Mandamus is an extraordinary writ that can be used to compel public officials to perform nondiscretionary, ministerial duties to which the petitioner has a clear legal right. See, e.g., City of Miami Beach v. Mr. Samuel's, Inc., 351 So.2d 719 (Fla. 1977); Jackson v. State, 802 So.2d 1213 (Fla. 2d DCA 2002); see generally Angela C. Flowers, "Mandamus," in Florida Appellate Practice, § 10-C.2 (6th ed. Fla. Bar 2006). Because we are unable to conclude that the public defender has demonstrated *399 that Ms. Conway has an indisputable legal duty to provide and pay for the transcript requested by the public defender, we must deny the petition.
However, we hasten to add that we are also unable to conclude that the duty lies with the public defender as Ms. Conway argues. The genesis of the dispute underlying this writ proceeding is the implementation of revision 7 of article V of the Florida Constitution. In their arguments, the parties raise a myriad of real problems and unanswered questions resulting from the interplay of various court rules, statutory provisions, and reports of committees and commissions involved in the implementation of revision 7 as it pertains to the funding of Florida's court system. Before the constitution was amended by revision 7, the cost of court reporters was generally borne by the counties. Since the amendment, these costs, often described as a portion of the costs of "due-process services," are now covered by the state budget. Unfortunately, a review of the rules and statutes cited by the parties that relate to these due-process services reveals that it is not entirely clear who within state government must bear the responsibility for obtaining and paying for the transcript at issue in the underlying appeal. As such, petitioners have not demonstrated a clear legal right to compel any of the respondents to provide the transcription service in this case.
Petition for writ of mandamus denied.
FULMER, C.J., and CANADY, J., Concur.
ALTENBERND, J., Concurs with opinion.
ALTENBERND, Judge, Concurring.
I concur in the decision to deny this petition for writ of mandamus. As to the issues relating to James Calvin Ingram, I agree that we cannot use mandamus to order the large group of people involved in the process of recording and transcribing court proceedings to do a better job. Quality control is simply not a function that mandamus is designed to perform or achieve.
The fact that we cannot improve the quality of transcripts by issuing a writ of mandamus, however, should not be read as a statement that we believe the current methods of digital recording are necessarily working well. From my perspective, at least, there appears to have been a marked decline in the quality of transcripts since the trial courts began increasing their reliance upon electronic recording and minimizing the use of trained professional court reporters.
Many trial courts, especially criminal courts, are courts of record. Their proceedings are expected to be available for the public to review after the fact. We do significant damage to the legitimacy of this branch of government when we accept records that do not accurately explain the proceedings that occurred in open court. I am convinced that modern digital methods can eventually produce adequate records to safeguard courts of record; I am less convinced that those methods are currently providing adequate transcripts for appellate review. Hopefully, both the public and the legislature understand that there are real costs associated with any change in technology that deteriorates the quality of the record in courts of record.
As to the issues relating to L.A., I also concur that mandamus is inappropriate. However, I would write to address more fully those issues, which include questions regarding what constitutes a proper transcript, who is responsible for paying for that transcript, and who should be permitted to prepare a transcript from electronically *400 recorded proceedings. Even though we are denying mandamus relief in this case, I would specifically announce that a CD recording is not a transcript, and that, pursuant to the Florida Rules of Appellate Procedure, a transcript for purposes of appellate review must be transcribed by a court reporter.
What Is a Transcript?
First, it should be clearly understood that a CD containing the sounds recorded in a courtroom is not a "transcript." Although all of the parties to this proceeding now agree that a CD recording is not a transcript, over the last several years we have repeatedly had trial courts and clerks of trial courts suggest that a "CD transcript" would suffice for appeal. It is worthwhile to explain why that argument is incorrect.
The specifications for a "transcript" are contained in Florida Rule of Judicial Administration 2.535(e).[3] The rule requires that a transcript "shall be uniform in and for all courts throughout the state." Rule 2.535(e)(1) specifically requires a "printed" and "bound" transcript. A CD containing a digital recording of sounds in a courtroom does not satisfy these uniform requirements. Likewise, Florida Rule of Appellate Procedure 9.200(b)(2) requires that a transcript be "securely bound in consecutively numbered volumes not to exceed 200 pages each," a requirement that obviously cannot be fulfilled with a mere recording of sound. Moreover, a representation of fact in a brief must be supported by a citation to the appropriate volume and page of the transcript. Fla. R.App. P. 9.210(b)(3). Thus, under the existing rules a CD recording of the sounds in a courtroom cannot serve as a transcript.
Who Pays for a Transcript?
The parties have spent a significant amount of time arguing over this issue. The Twelfth Judicial Circuit has attempted to resolve this issue through Administrative Order 2006-6-2, which clearly contemplates that the public defender must pay for the transcription of any electronically recorded proceedings.
It seems unlikely that the revisions to rule 2.535(g) regarding transcription of electronic recordings by persons other than court reporters contemplated placing a multi-track recording in the hands of a criminal defendant or his attorney with instructions to prepare an official transcript for use in his or her appeal. While there would appear to be no similar conflict of interest in asking the public defender to pay for an official transcript prepared by a court reporter or other court representative from the public defender budget, if that is what the statutes and rules require, this leaves unresolved many other issues, such as who would pay for the transcript if an indigent criminal defendant elected to proceed pro se. I agree with the majority, however, that the various court rules, statutory provisions, and reports of committees and commissions involved in the implementation of revision 7 do not establish a clear legal right as to who must pay for a transcript. Thus mandamus is not an appropriate means to address these important questions.
Who Can Prepare an Official Transcript for Appellate Purposes?
Because we do not yet have a transcript in the L.A. case, I recognize that the issue of whether the transcript must be prepared by a court reporter is not necessarily ripe for review. On the other hand, the *401 administrative order from the Twelfth Judicial Circuit does not, in my opinion, "provide a means to have the recording transcribed" when it simply provides for a copy of a CD to be given to a party and tells them to find someone somewhere to transcribe it. I do not believe that the administrative order is sufficient to comply with rule 2.535(g)(3)(B) and the relevant appellate rules.
The judges on this panel have struggled to understand the interplay between several rules of judicial administration that admittedly are somewhat confusing. While the majority opinion does not discuss this issue, it is reasonable to assume that the majority does not accept my individual analysis of this issue. Nevertheless, I conclude that it is worthwhile to at least explain the issue so that the relevant rules committees may consider clarifications to the relevant rules.
The Florida Rules of Judicial Administration have contemplated the use of electronic recording and transcription since their inception in 1978. See In re Florida Rules of Judicial Administration, 360 So.2d 1076 (Fla.1978). Although the initial version of then rule 2.070 regarding court reporting did not specify that a court reporter had to transcribe any electronic recordings, it appears that the rule was either interpreted to require this or that this naturally evolved as a common practice. In Amendments to the Florida Rules of Judicial Administration, 780 So.2d 819 (Fla.2000), however, the rule was amended to specifically permit circuit-wide administrative orders permitting electronic recording and "transcriptions by persons other than court reporters." Thus, this amendment to what is now rule 2.535 authorizes a transcript to be prepared by someone who is not a court reporter or an officer of the court.
I conclude, however, that this provision must be read together with the Florida Rules of Appellate Procedure. To the extent rule 2.535(g)(3) conflicts with specific rules of appellate procedure, I conclude the appellate rules take precedence over rule 2.535(g)(3) in review proceedings before the district courts of appeal and the Florida Supreme Court.
Rule 2.110, which appears as the first rule of judicial administration, generally states, "These rules shall supersede all conflicting rules and statutes."[4] The third rule, however, rule 2.130, is entitled "Priority of Conflicting Appellate Rules" and specifically states, "The Florida Rules of Appellate Procedure shall control all proceedings in the supreme court and the district courts . . . notwithstanding any conflicting rules of procedure."[5] Reading the two rules together, when an issue is addressed in the Florida Rules of Appellate Procedure and applies to proceedings within the supreme court or district courts of appeal, the appellate rule on that issue supersedes any other rules of procedure  including those rules of procedure contained within the Florida Rules of Judicial Administration.
*402 The Florida Rules of Appellate Procedure do not recognize the existence of someone described as a "transcriptionist." The rules contemplate that a transcript will be prepared by a "court reporter." Rule 9.200(b)(2) mandates that "[w]ithin 30 days of service of a designation, or within the additional time provided for under subdivision (b)(3) of this rule, the court reporter shall transcribe and deliver to the clerk of the lower tribunal the designated proceedings and shall furnish copies as requested in the designation." The court-approved forms contain only a designation to a court reporter. See Fla. R.App. P. 9.900(g). Thus, to the extent that rule 2.535 permits transcription by persons other than court reporters, I believe that rule conflicts with rule 9.200(b)(2). In an appellate proceeding, rule 2.130 requires that rule 9.200(b)(2) override the otherwise applicable provisions of rule 2.535(g)(3).[6]
Court reporters, at least for these functions, are officers of the court. See Fla. R. Jud. Admin. 2.535(f). Moreover, by statute, the supreme court is required to establish minimum standards for court reporters. See § 25.383, Fla. Stat. (2005). It has no such obligation for any profession known as "transcriptionist." If we allow rule 2.535 to override the rules of appellate procedure in this respect, then we face a future in which criminal defendants, their family members, or others with interest in a case may seek to prepare and file the transcript that becomes an official part of the record on appeal. People who do not possess a high school diploma may prepare such a transcript. In a digital world, such transcriptionists may not even reside in Florida or in the western hemisphere. It may not be essential that the Florida Rules of Appellate Procedure have a valid and logical reason to require the use of court reporters for those rules to override rule 2.535(g)(3), but it is reassuring to understand the importance of using court reporters for all transcripts used in appellate proceedings.
As a result, although I concur with the majority that a writ of mandamus is inappropriate to address the compelling issues raised in this proceeding, I would take this opportunity to explain that a digital recording is not a transcript and that any transcript presented to this court in its review capacity must be prepared by an official court reporter.
NOTES
[1] The petitioners note that this transcript was produced without requiring payment from the due-process services account of the local public defender. See § 29.018, Fla. Stat. (2005).
[2] Under the authority granted to the chief judge in rules 2.215 and 2.535, Florida Rules of Judicial Administration (renumbered from rules 2.050 and 2.070, respectively, on September 21, 2006, see In re Amend. to Fla. Rules of Jud. Admin., 939 So.2d 966 (Fla. 2006)), this administrative order provides a court reporting plan for the use of stenographic court reporting and electronic or digital court recording of all proceedings required to be reported or recorded at public expense. The administrative order may be viewed at http://12circuit.state.fl.us/Admin% 20Orders/Section2/06-06-02.pdf.
[3] Prior to September 21, 2006, this rule was Florida Rule of Judicial Administration 2.070(e). See In re Amendments to the Florida Rules of Judicial Administration  Reorganization of the Rules, 939 So.2d 966 (Fla.2006).
[4] The Florida Rules of Judicial Administration were adopted in 1978 and have always included the introductory provision that the rules "supersede all conflicting rules and statutes." In re Florida Rules of Judicial Administration, 360 So.2d 1076 (Fla.1978). Certainly, rule 2.110 indicates that these rules "supersede," i.e., supplant or replace, any conflicting rules that existed on January 1, 1978. I am not certain that it was the intent for these rules to control over all rules of procedure created thereafter. The current rules of appellate procedure went into effect on March 1, 1978. See In re Proposed Florida Appellate Rules, 351 So.2d 981 (Fla.1977).
[5] This specific rule was added to the Rules of Judicial Administration in 1997. See In re Amendments to the Florida Rules of Judicial Administration, 682 So.2d 89 (Fla.1996).
[6] I note that this interpretation does not deprive rule 2.535(g)(3) of meaning. Although a court reporter would be required to transcribe the electronic recording for appellate proceedings in the supreme court or district courts, the circuit court could continue to employ transcriptionists for other purposes. Indeed, rule 2.535(g)(3)(B) acknowledges that transcripts are often necessary for the trial court's purposes in pending proceedings. I note that circuit courts have also effectively used electronic recordings for hearings before general magistrates or hearing officers, which are then transcribed for review by the circuit courts. The portion of the rule requiring transcription by persons other than court reporters would thus remain in effect for all purposes other than the transcribing of an appropriate appellate record in the supreme court or district courts.